Belinda Faye LYLE, Plaintiff–Appellee,

v.

FOOD LION, INCORPORATED, Defendant–Appellant,

v.

Wayne TEW, Third Party Defendant–Appellee.

Wayne TEW, Plaintiff–Appellee,

v.

FOOD LION, INCORPORATED, Defendant–Appellant.

Nos. 91–1524, 91–1525.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1991.

Decided Jan. 24, 1992.

As Amended March 2, 1992.

David R. Simonsen, Jr., Richmond, Va., argued, for defendant-appellant.

James McDaniel Johnson, Bryan, Jones, Johnson & Snow, Dunn, N.C., argued, for plaintiffs-appellees.

Before PHILLIPS and WILKINS, Circuit Judges, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

PHILLIPS, Circuit Judge:

Food Lion, Inc., appeals the adverse judgment of the district court in actions brought by appellees Belinda Lyle and Wayne Tew, former Food Lion employees, to recover unpaid overtime compensation, liquidated damages, attorney's fees, and costs under § 16(b) of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* (FLSA). After a bench trial, the district court ruled in favor of Lyle and Tew, awarding them $8,802 and $44,550, respectively, in unpaid overtime compensation and liquidated damages, attorney's fees in the amount of 20 percent of the judgment award, and costs. We affirm the judgment of the district court in all respects except the amount awarded in attorney's fees.

## I

Belinda Lyle and Wayne Tew were both employed by Food Lion at Store No. 123 on Legion Road, Fayetteville, North Carolina, during the period for which they sought to recover for uncompensated overtime hours they allegedly worked. Tew was the meat market manager at Store No. 123 and Lyle was a meat wrapper. Tew was Lyle's direct supervisor.

Both Tew and Lyle were full-time, hourly employees of Food Lion. Food Lion has an elaborate scheduling system by which it sets the number of hours each hourly employee is authorized to work each week, and employees must complete the duties assigned to them within the hours authorized. Tew and Lyle consistently found that they were unable to complete their duties in accordance with Food Lion standards in the time allotted by the scheduling system. Their inability to meet these standards within the hours scheduled came up against Food Lion policies both minimizing the number of overtime hours store management could authorize hourly employees to work and prohibiting hourly employees from working "off the clock"—i.e., unscheduled and unreported overtime work. Obviously, employees could be fired for work that did not meet Food Lion standards; they could also be fired for working off the clock. Tew and Lyle were aware of the policy against off-the-clock work, but worked off the clock anyway in order to complete their assigned duties in accordance with Food Lion standards. For Tew and Lyle, the possibility of dismissal for substandard work was greater, they thought, than that for getting caught working off the clock.

In May 1989, Tew and Lyle both admitted to Food Lion upper management that they had been regularly working off the clock since August 1987. Both were transferred to another Food Lion store and Tew was demoted from meat market manager to meat cutter. Both Tew and Lyle voluntarily left their employment with Food Lion in August 1989.

In actions brought against Food Lion pursuant to § 16(b) of the FLSA, Tew and Lyle sought to recover for the uncompensated overtime hours they allegedly worked from August 1987 to May 1989. In response to Tew's complaint, Food Lion counterclaimed against Tew for breach of contractual and fiduciary duties to Food Lion, and in response to Lyle's complaint, Food Lion filed a third-party complaint against Tew alleging breach of contractual and fiduciary duties in Tew's supervision of Lyle and seeking indemnity against Tew for any liability to Lyle. Both the counterclaim and the third-party complaint were dismissed by the district court.

Tew alleged in his complaint that he had worked an average of 18 hours per week off the clock during the period from August 1987 to May 1989, but sought to recover for only 15 hours per week. Lyle alleged that she had worked an average of 10 off-the-clock hours per week during the same period, but sought to recover for only 6 hours per week. The district court found it credible that Tew and Lyle had worked at least as many uncompensated overtime hours as they sought to recover for, and also found that Food Lion, through its store managers and assistant store managers, had actual or constructive knowledge of Tew and Lyle's off-the-clock work, the evidence showing, among other things, that on numerous occasions, store management personnel gave Tew and Lyle keys to the store so that they could let themselves in to work off the clock before regular store hours. The court awarded Tew and Lyle $44,550 and $8,802, respectively, half of which was back pay for uncompensated overtime hours worked. The other half was liquidated damages that were awarded because the court found that Food Lion, in violating the FLSA, had not acted in good faith.

The district court allowed Tew and Lyle to recover for the entire claimed period of 90 weeks under a three-year statute of limitations provided by 29 U.S.C. § 255(a) for willful violations of the FLSA, which the court found in this case. Without benefit of the three-year statute of limitations (the standard period is two years), Tew and Lyle would have been able to recover for

only 68 of the 90 weeks of uncompensated overtime work they claimed. 756 F.Supp. 238.

Finally, the court awarded Tew and Lyle attorney's fees of 20 percent of the judgment award—$10,670.40—and costs of $499. This appeal followed.

## II

Food Lion makes various assignments of error in this appeal challenging (1) the dismissal of its counterclaim and third-party complaint against Tew; (2) the judgment in favor of plaintiffs on their claim; and (3) the award of attorney's fees. We consider each in turn.

### A

■ Food Lion counterclaimed and filed a third-party complaint against Tew on the ground that he breached his contract with Food Lion and his fiduciary duty to the company as a meat market manager by himself violating and allowing Lyle, an employee under his supervision, to violate Food Lion's policy against off-the-clock work. Both the counterclaim and the third-party complaint were dismissed by the district court. In effect, Food Lion sought to indemnify itself against Tew for its own violation of the FLSA, which the district court found, and we agree, is something the FLSA simply will not allow. As the Fifth Circuit has noted, "[t]o engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution" and "would undermine employers' incentives to abide by the Act." *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir.1986). We hold, therefore, that it was proper for the district court to dismiss the counterclaim and third-party complaint Food Lion filed against Tew.

### B

■ To prevail in the district court, Tew and Lyle had to prove by a preponderance of the evidence that they worked overtime hours without compensation and that Food Lion knew of such work. *Pforr v. Food*

*Lion, Inc.*, 851 F.2d 106, 109 (4th Cir.1988); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir.1986). Moreover, if an employer is found to have violated the FLSA's overtime pay provisions, it is liable in the amount of the proven unpaid overtime compensation plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). However, if the employer acted in good faith and had reasonable grounds for believing that it was not violating the FLSA, the court, in its discretion, can award a smaller amount of liquidated damages or none at all. 29 U.S.C. § 260. And where the violation of the FLSA is found to be willful, the applicable statute of limitations is three years. 29 U.S.C. § 255(a).

Food Lion contends on appeal that the evidence before the district court was not sufficient to prove that the off-the-clock hours allegedly worked by Tew and Lyle were overtime hours, or that Food Lion suffered or permitted them to work these hours. Food Lion also contends that the district court erred in holding that Food Lion did not act in good faith and that its violation of the FLSA was willful. These contentions take issue with what were essentially the district court's findings of fact in this case. The district court noted that

> [t]his case hinges on a credibility determination. The plaintiffs testified that they regularly worked off-the-clock with the knowledge of Food Lion officials at the store level. These officials testified that they had no such knowledge and that it would have been impossible for the plaintiffs to have worked off-the-clock without their knowledge. The court believes the plaintiffs and not the store managers.

J.A. at 380. As this court has recognized, a trial judge's decision about which of conflicting testimony to credit may "virtually never" be declared clear error so long as the testimony credited is "coherent and facially plausible" and "is not contradicted by extrinsic evidence." *Dwyer v. Smith*, 867 F.2d 184, 189 (4th Cir.1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)). We are satisfied that

under that test the dispositive credibility determinations made by the district court in this case were not clearly erroneous, and we therefore affirm that portion of the resulting judgment which found Food Lion liable to Tew and Lyle for unpaid overtime compensation, liquidated damages, and costs.

## C

As successful parties in their action against Food Lion, Tew and Lyle were also entitled to an award of reasonable attorney's fees under the FLSA. 29 U.S.C. § 216(b). In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court noted that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. This calculation, the "lodestar" fee, "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id. Hensley* concerned the award of reasonable attorney's fees under 42 U.S.C. § 1988, but the Court nonetheless noted that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7, including the FLSA.

■ While the district court found that 82 hours were expended by appellees' attorney in this case, and that the attorney's customary hourly rate was $90 per hour (both of which we find, and Food Lion concedes, are reasonable), the court did not multiply the two to yield the lodestar fee of $7,380 (82 × $90). Rather, the district court awarded attorney's fees of $10,-670.40—20 percent of the amount of the judgment award, reflecting the attorney's

customary contingent fee arrangement in cases of this sort.

Because we understand the Supreme Court's most relevant decisions firmly to have "adopted the lodestar approach as the centerpiece of attorney's fee awards," *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *see also Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) *(Delaware Valley I),* we must conclude that it was an abuse of discretion for the district court here to forgo the lodestar approach and to calculate reasonable attorney's fees by adopting instead the attorney's customary contingent-fee arrangement of 20 percent of the recovery. The Supreme Court has held that "[t]he contingent-fee model, premised on the award to an attorney of an amount representing a percentage of the damages, is ... inappropriate for the determination of fees under § 1988," *Blanchard,* 489 U.S. at 96, 109 S.Ct. at 946, and we are satisfied that this implies that the contingent-fee approach is inappropriate under the FLSA as well.[1] Moreover, "[t]he defendant is not ... required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way." *Id.* at 93, 109 S.Ct. at 944. As noted earlier, the usual way, the lodestar approach, yields a fee in this case of $7,380, which is some $3,000 less than that yielded by awarding an amount based on the attorney's customary contingent fee.

There remains the possibility, which must be considered, that the greater fee awarded against defendant might be otherwise justified as a proper exercise of the district court's discretion. Though the lodestar—the product of the hours reasonably expended times a reasonable rate—is

---

1. In *Delaware Valley I,* the Supreme Court applied § 1988 standards to the determination of fees under the Clean Air Act, 42 U.S.C. § 7401 *et seq.,* noting that "[g]iven the common purpose of both § 304(d) [of the Clean Air Act] and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner." 478 U.S. at 560, 106 S.Ct. at 3096. Section 216(b) of the FLSA shares in this common purpose as well, promoting enforcement of important federal labor policies, and we will interpret its attorney's fees provisions following the principles governing the award of such fees under § 1988.

a presumptively reasonable fee, *Delaware Valley I*, 478 U.S. at 565, 106 S.Ct. at 3098, the calculation of the lodestar "does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. These other considerations, the Court noted in *Hensley*, may include the ones identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), though "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

■■■ If we start, in this case, with the lodestar fee of $7,380, we find that the district court's award of $10,670.40 represents an upward adjustment of the lodestar by a factor of 1.45. While it is well within the discretion of the district court to determine the amount of an award of attorney's fees, *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir.1984), and to adjust the lodestar upward or downward as it deems appropriate, this must be done on a principled basis, clearly explained by the court. *Blum*, 465 U.S. at 898–901, 104 S.Ct. at 1548–50; *Hensley*, 461 U.S. at 437–40, 103 S.Ct. at 1941–43. We find in the record no clear explanation for what was in effect a 45 percent enhancement of what we calculate, based on the findings of the district court, should have been the lodestar fee in this case. Nor do we find on our review of the record any grounds so manifestly supporting an upward adjustment from the lodestar that we might assume and affirm their use by the district court. The case obviously was well prepared and presented by appellees' counsel, but it did not present uniquely novel or difficult questions of law or fact, and while it did require, according to the district court, a high degree of legal ability and competence for preparation and presentation at trial, the skill, ability, and experience required of an attorney under

these circumstances are typically accounted for in the attorney's customary hourly rate and in the hours she must expend on the matter. *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–49. The only other "exceptional" factor mentioned by the district court is the undesirability of the case within the legal community in which the suit arose. The court noted that the case was accepted on a contingent-fee basis and that there was substantial risk for an attorney of not being compensated at all, due to the length of time such cases take to litigate and the fact that Food Lion was an adversary known for its persistent and vigorous defense of labor disputes. This may all be valid, but the risk of counsel's not being compensated in a case has been held, standing alone, not a sufficient ground for enhancing the lodestar fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 726, 107 S.Ct. 3078, 3087, 97 L.Ed.2d 585 (1987) (plurality opinion). To justify a so-called contingency enhancement, it must appear that in the relevant market only such an enhanced fee is likely to insure representation of comparably situated claimants. *Id.* at 731, 107 S.Ct. at 3089. No such showing was made here.

In sum, we find that it was an abuse of discretion for the district court to award attorney's fees of 20 percent of the judgment award in this case. We therefore vacate the award as to its amount only and we remand the matter to the district court for entry of an attorney's fee award in the amount of $7,380, which, based on the findings of the district court, we have calculated as the appropriate lodestar fee. In all other respects, the judgment of the district court is affirmed.[2]

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

**2.** We note that our holding that appellees are entitled to recover from Food Lion no more than reasonable attorney's fees as calculated by the lodestar approach controls only what Food Lion must pay appellees, and not what appellees may be contractually obligated to pay their at-

torney under a contingent-fee agreement. *Cf. Venegas v. Mitchell*, 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74 (1990) ("Section 1988 itself does not interfere with the enforceability of a contingent-fee contract.").