**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN DESMOND,

*Plaintiff-Appellant,*

v.

PNGI CHARLES TOWN GAMING,
L.L.C., d/b/a Charles Town Races
& Slots,

*Defendant-Appellee.*

No. 09-2189

DANA WITHERSPOON,

*Plaintiff-Appellant,*

v.

PNGI CHARLES TOWN GAMING,
L.L.C., d/b/a Charles Town Races
& Slots,

*Defendant-Appellee.*

No. 09-2190

M. LARRY SANDERS,

　　　　　*Plaintiff-Appellant,*

　　　　　v.

PNGI CHARLES TOWN GAMING,
L.L.C., d/b/a Charles Town Races
& Slots,

　　　　　*Defendant-Appellee.*

No. 09-2192

JOHN DESMOND,

　　　　　*Plaintiff-Appellee,*

　　　　　v.

PNGI CHARLES TOWN GAMING,
L.L.C., d/b/a Charles Town Races
& Slots,

　　　　　*Defendant-Appellant.*

No. 09-2254

Appeals from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
John Preston Bailey, Chief District Judge.
3:06-cv-00128-JPB; 3:06-cv-00129-JPB;
3:06-cv-00135-JPB)

Argued: September 23, 2010

Decided: January 14, 2011

Before TRAXLER, Chief Judge, SHEDD, Circuit Judge,
and James C. DEVER III, United States District Judge for
the Eastern District of North Carolina,
sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Dever wrote the opinion, in which Chief Judge Traxler and Judge Shedd joined.

---

## COUNSEL

**ARGUED**: Paul B. Weiss, MARTIN & SEIBERT, LC, Martinsburg, West Virginia, for John Desmond, Dana Witherspoon, and M. Larry Sanders. Brian Michael Peterson, BOWLES, RICE, MCDAVID, GRAFF & LOVE, PLLC, Martinsburg, West Virginia, for PNGI Charles Town Gaming, L.L.C., d/b/a Charles Town Races & Slots. **ON BRIEF:** Charles F. Printz, Jr., BOWLES, RICE, MCDAVID, GRAFF & LOVE, PLLC, Martinsburg, West Virginia, for PNGI Charles Town Gaming, L.L.C., d/b/a Charles Town Races & Slots.

---

## OPINION

DEVER, District Judge:

John Desmond, Dana Witherspoon, and M. Larry Sanders (collectively "appellants" or "former employees") appeal from an award of unpaid overtime compensation in their case under the Fair Labor Standards Acts ("FLSA") against their former employer, PNGI Charles Town Gaming, L.L.C., d/b/a Charles Town Races & Slots ("Charles Town Gaming" or "employer"). The former employees dispute how the district court computed unpaid overtime compensation under the FLSA. Charles Town Gaming cross-appeals and disputes the district court's decision to grant summary judgment to the former employees as to whether Charles Town Gaming's FLSA violation was willful. As explained below, we affirm the district court's method of computing unpaid overtime compensation,

vacate the district court's judgment as to willfulness, and remand for a trial on the issue of willfulness.

I.

Desmond, Witherspoon, and Sanders are three former racing officials who filed suit against their former employer Charles Town Gaming, alleging violations of the overtime provisions of the FLSA. J.A. 49–50. The district court consolidated the three actions and granted summary judgment to Charles Town Gaming, concluding that because the appellants held administrative positions, they were therefore exempt from the overtime provisions of the FLSA. Appellants timely appealed, and we reversed. *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 689, 691 (4th Cir. 2009). We concluded that the former employees did not qualify for the administrative exemption under the FLSA. *Id.* at 695. We then remanded the case to the district court for further proceedings. *Id.* at 695.

On remand, the district court entered summary judgment for the former employees on the issue of FLSA liability. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 661 F. Supp. 2d 573, 576 (N.D. W.Va. 2009). The district court then calculated the unpaid overtime compensation owed to the former employees under 29 U.S.C. § 216(b). *Id.* at 576–85; *see* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [29 U.S.C. § 206 or § 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). Charles Town Gaming conceded the number of hours for which overtime was owed. *Desmond*, 661 F. Supp. 2d at 577. The district court determined the rate at which those hours should be compensated by first applying *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942), to determine the regular rate. The district court then examined whether the appropriate overtime premium was 50% or 150%

of that regular rate for all hours worked over 40. After briefing, the district court calculated the unpaid overtime compensation under 29 U.S.C. § 216(b) by using a 50% premium. The court based its decision not on 29 C.F.R. § 778.114, but rather upon the logic of *Overnight Motor* and general principles of compensatory damages. *Desmond*, 661 F. Supp. 2d at 583–84.

On remand, the parties also disputed whether Charles Town Gaming's FLSA violation was willful. After considering cross motions for summary judgment as to willfulness, the district court concluded that Charles Town Gaming's FLSA violation was willful as matter of law, thereby expanding the statute of limitations period from two years to three years. *Id.* at 586.

The former employees appealed the district court's calculation of unpaid overtime compensation under 29 U.S.C. § 216(b). Charles Town Gaming cross-appealed the district court's decision to award summary judgment on the willfulness issue.

## II.

The former employees worked as racing officials with Charles Town Gaming. J.A. 50. Charles Town Gaming prepared the job descriptions for racing officials in 1999. *Id.* at 55–56. In doing so, Charles Town Gaming's human resources director used a computer program to help determine whether to designate the position as exempt or non-exempt from overtime under the FLSA. *Id.* Charles Town Gaming paid the racing officials a per diem rate and treated them as exempt. *See* Aff. Karen Raffo, Nov. 20, 2007. Over the ensuing years, Charles Town Gaming changed the pay from per diem to a fixed weekly salary that the parties intended to cover all hours worked. *See* J.A. 56, 146–52; Aff. Karen Raffo, Nov. 20, 2007. Charles Town Gaming believed (erroneously) that the former employees were subject to the FLSA administrative exemption; therefore, Charles Town Gaming did not pay them

overtime. J.A. 49. All three appellants often worked more than 40 hours in a week. *Id.* at 50. After the appellants unanimously declared the wrong horse to have won a race, Charles Town Gaming dismissed them from their employment. *Id.*

The former employees contend the district court erred in calculating their unpaid overtime compensation under 29 U.S.C. § 216(b). Charles Town Gaming contends the district court erred by concluding that their FLSA violation was willful. We review a grant of summary judgment de novo. *See, e.g.*, *United States v. Bergbauer*, 602 F.3d 569, 574 (4th Cir. 2010). When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure. *See, e.g.*, *Ga. Pac. Consumer Prods., L.P. v. Von Drehle Corp.*, 618 F.3d 441, 445 (4th Cir. 2010).

## A.

The former employees challenge how the district court calculated their unpaid overtime compensation under 29 U.S.C. § 216(b). The Supreme Court addressed how to calculate such unpaid overtime compensation under 29 U.S.C. § 216(b) in *Overnight Motor*. 316 U.S. at 580. The Court held that when calculating the "regular rate" of pay for an employee who agreed to receive a fixed weekly salary as payment for all hours worked, a court should divide the employees fixed weekly salary by the total hours worked in the particular workweek. *Id.* at 579–80 (analyzing section 7 of the FLSA, now codified at 29 U.S.C. § 207(a)(1)). This calculation should be completed for each workweek at issue and results in a regular rate for a given workweek. *Id.* Of course, the Court recognized that the regular rate could vary depending on the total hours worked. The Court then determined that the employee should receive overtime compensation for all hours worked beyond 40 in a given workweek at a rate not less than one-half of the employee's regular rate of pay. *Id.*

Although the parties agree that *Overnight Motor* applies in calculating the regular rate, they disagree about how to calculate the overtime premium. Specifically, the parties disagree over whether the former employees should receive 150% of the regular rate for all hours worked over 40 in a given workweek or 50% of the regular rate for all hours worked over 40 in a given workweek.

In analyzing how to calculate unpaid overtime compensation under 29 U.S.C. § 216(b) in this mistaken exemption classification case, we note that four sister circuits have addressed this issue. The First, Fifth, Seventh, and Tenth Circuits all have determined that a 50% overtime premium was appropriate in calculating unpaid overtime compensation under 29 U.S.C. § 216(b) in mistaken exemption classification cases, so long as the employer and employee had a mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the minimum wage for every hour worked. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988).

In *Blackmon*, the Fifth Circuit applied 29 C.F.R. § 778.114 to calculate unpaid overtime compensation in a mistaken exemption classification case. 835 F.2d at 1138. The employees in *Blackmon* were meat-market managers who were wrongly classified as exempt. *Id.* at 1137–38. The district court calculated their unpaid overtime compensation by dividing the weekly salary by 40 hours to determine their regular rate, multiplying that rate by 150%, and then multiplying that result by the number of overtime hours. *Id.* at 1138. The Fifth Circuit rejected this method, instead applying 29 C.F.R. § 778.114 to determine the regular rate, and only using a 50% multiplier. *Id.* The Fifth Circuit did not cite, much less discuss, *Overnight Motor*.

In *Valerio*, the First Circuit upheld an award of summary judgment in a mistaken exemption classification case. 173 F.3d at 39–40. Valerio was wrongly classified as an exempt employee. *Id.* at 37. Upon dismissing Valerio from employment, her employer gave her a lump-sum payment intended to cover any overtime owed to her. *Id.* at 38. In calculating the unpaid overtime compensation, the employer paid her a 50% overtime premium and relied on 29 C.F.R. § 778.114. The First Circuit affirmed the district court's finding that the amount paid was more than was owed to Valerio under the FLSA. *Id.* In *Valerio*, the First Circuit cited, but did not discuss, *Overnight Motor*. *Id.* at 39–40.

In *Clements*, the Tenth Circuit affirmed a district court's application of 29 C.F.R. § 778.114 to calculate unpaid overtime compensation in a mistaken exemption classification case. 530 F.3d at 1225. The employees in *Clements* provided recruiting services to the Army on behalf of their employer, Serco. *Id.* Serco had erroneously classified these employees as exempt under the "outside salesmen" exemption. *Id.* at 1227; *cf.* 29 U.S.C. § 213(a)(1). The employees claimed a 150% multiplier applied because the employer and employees had not agreed on whether overtime compensation was owed. *Clements*, 530 F.3d at 1230. In affirming the use of a 50% multiplier in calculating the unpaid overtime compensation, the Tenth Circuit cited 29 C.F.R. § 778.114, the First Circuit's decision in *Valerio*, and our decision in *Bailey v. County of Georgetown*, 94 F.3d 152, 155–57 (4th Cir. 1996). *Clements*, 530 F.3d at 1230. The Tenth Circuit found the lack of a clear and mutual understanding on the overtime premium to be "irrelevant as to whether the Employees understood they were being paid on a salaried . . . basis." *Id.* at 1231. In *Clements*, the Tenth Circuit did not cite, much less discuss, *Overnight Motor*.

In *Urnikis-Negro*, the Seventh Circuit affirmed a district court's award of a 50% overtime premium to calculate unpaid overtime compensation in a mistaken exemption classification

case. 616 F.3d at 684. However, the court rejected the district court's retroactive application of 29 C.F.R. § 778.114, finding it a "dubious source of authority for calculating a misclassified employee's damages." *Id.* at 679. Instead, the court relied on *Overnight Motor*. *Id.* at 680–84. The court held that when an employer and employee agree that a fixed salary will constitute payment at the regular rate for all hours worked and the rate is not lower than the minimum wage, a court should rely on *Overnight Motor* to calculate unpaid overtime compensation under 29 U.S.C. § 216(b). *Id.* Moreover, in such a situation, the court calculates the unpaid overtime compensation using a 50% multiplier rather than a 150% multiplier. *See id.*

In addition to these decisions from our sister circuits, the Department of Labor also has approved using a 50% overtime premium to calculate unpaid overtime compensation in a mistaken exemption classification case. *See* Retroactive Payment of Overtime and the Fluctuating Workweek Method of Payment, Wage and Hour Opinion Letter, FLSA 2009-3 (Dep't of Labor Jan. 14, 2009). The DOL issued the opinion letter in response to an employer who asked how to compensate employees mistakenly classified as exempt. *Id.* at 1. In the opinion letter, the DOL states that "because the fixed salary covered whatever hours the employees were called upon to work in a workweek; the employees will be paid an additional one-half their actual regular rate for each overtime hour . . .; and the employees received and accepted the salary knowing that it covered whatever hours they worked," a retroactive payment of overtime using the 50% multiplier conforms with FLSA requirements. *Id.* at 2.[1]

Here, the district court did not apply 29 C.F.R. § 778.114 to this mistaken exemption classification case. Rather, the dis-

---

[1]Such DOL opinion letters are not binding on courts, but "constitute a body of experience and informed judgment . . . give[n] . . . substantial weight." *Flood v. New Hanover County*, 125 F.3d 249, 253 (4th Cir. 1997) (discussing a DOL Wage and Hour Division letter ruling).

trict court relied on the logical implications of *Overnight Motor* to calculate unpaid overtime compensation under 29 U.S.C. § 216(b). *Desmond*, 661 F. Supp. 2d at 584. The district court found that there was an agreement that the fixed weekly salary covered all hours worked. *Id.* The district court then reasoned that *Overnight Motor*'s regular-rate determination implies the previously paid weekly salary covers the base compensation for all hours worked. *Id.* Thus, the district court concluded that it need only award 50% of the regular rate to provide the employees their "unpaid overtime compensation" under 29 U.S.C. § 216(b). *Id.*

Appellants disagree and insist that such a reliance on *Overnight Motor* improperly expands federal common law. They also (confusingly) argue that *Chevron*[2] deference to 29 C.F.R. § 778.114 requires courts to use a 150% multiplier and that if employers are allowed to retroactively apply section 778.114 in mistaken exemption classification cases, employers have no motive to pay for overtime as it accrues, effectively treating nonexempt employees as if they were exempt. In appellants' view, such a holding will create an incentive for employers to pay a fixed weekly salary, never to pay overtime, and then simply pay a 50% premium on the regular rate

---

[2] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). To the extent that appellants believe that *Chevron* applies to 29 C.F.R. pt. 778, appellants' reliance on *Chevron* is misplaced. A DOL interpretive bulletin (such as the one contained in 29 C.F.R. pt. 778) is different than a DOL regulation promulgated in accordance with notice and comment rulemaking. *See*, *e.g.*, *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1272 n.10 (4th Cir. 1996). Regulations promulgated in accordance with notice and comment rulemaking are analyzed in accordance with *Chevron*. *See*, *e.g.*, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165–75 (2007); *Christensen v. Harris County*, 529 U.S. 576, 586–88 (2000); *Auer v. Robbins*, 519 U.S. 452, 457–58 (1997). In contrast, interpretive bulletins "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Christensen*, 529 U.S. at 587; *Overnight Motor*, 316 U.S. at 580 n.17; *Monahan*, 95 F.3d at 1272 n.10.

if caught misclassifying non-exempt employees as exempt employees. *Cf.* 29 U.S.C. § 213 (a)(1); 29 C.F.R. pt. 541 (white-collar exemption regulations).

As the district court held, appellants' argument ignores the teaching of *Overnight Motor*. After all, in *Overnight Motor*, the Court recognized that employees and employers are free to agree to a reduced hourly wage in exchange for a fixed weekly salary, provided the fixed weekly salary covers all hours worked and meets minimum wage requirements. 316 U.S. at 580. In our view, the district court correctly concluded that *Overnight Motor* provides the appropriate method for calculating the unpaid overtime compensation under 29 U.S.C. § 216(b) in this case. Tellingly, in *Overnight Motor*, the Court provided the formula to compute the overtime due an employee who was paid a fixed weekly salary intended to cover all hours worked. *Overnight Motor*, 316 U.S. at 580 n.16. Although *Overnight Motor* concerned the more basic question of whether overtime compensation applies to those earning more than the minimum wage requirements in the FLSA, 316 U.S. at 575, it contains nothing to indicate why such a computation would not apply in determining unpaid overtime compensation under 29 U.S.C. § 216(b) in a mistaken exemption classification case. Indeed, in *Overnight Motor*, the Court interpreted 29 U.S.C. § 207(a) and explained the meaning of "the regular rate at which he is employed," and interpreted 29 U.S.C. § 216(b) and explained how to calculate "unpaid overtime compensation." *See Overnight Motor*, 316 U.S. at 574 n.2, 579–80.

Traditional principles of compensatory damages bolster this conclusion. Compensatory damages are "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." *Black's Law Dictionary* 445 (9th ed. 2009). Here, the former employees agreed to receive straight time pay for all hours worked in a given workweek and have already received such pay. Thus, the "loss suffered" is the 50% premium for their overtime hours. Accordingly, we affirm the district

court's judgment about how to calculate unpaid overtime compensation under 29 U.S.C. § 216(b).

## B.

In its cross appeal, Charles Town Gaming contends the district court mistakenly granted summary judgment to the former employees on the issue of willfulness. Whether a violation is willful impacts the length of the appropriate limitations period under the FLSA and can impact the computation of unpaid overtime compensation under the FLSA.[3] The FLSA provides two potential limitations periods. For non-willful FLSA violations, a two-year statute of limitations applies. *See* 29 U.S.C. § 255(a). When the violation is willful, a three-year statute of limitations applies. *Id.*

In *McLaughlin v. Richland Shoe Co.*, the Supreme Court clarified the meaning of willfulness under section 255(a). *See* 486 U.S. 128 (1988). Before *Richland Shoe*, a circuit split existed on the meaning of willfulness under the FLSA. *See id.* at 131 n.1. In *Coleman v. Jiffy June Farms, Inc.*, the Fifth Circuit held that the test of willfulness was simply whether the employer knew the FLSA was "in the picture." 458 F.2d 1139, 1142 (5th Cir. 1971). In other words, mere awareness of the possible application of the FLSA would suffice to extend the statute of limitations from two to three years. *Id.* In *Richland Shoe*, the Third Circuit rejected this view, concluding that the appropriate standard was whether an employer knew the conduct violated the FLSA, or showed reckless disregard of such a determination. *See Brock v. Richland Shoe Co.*, 799 F.2d 80, 82–83 (3d Cir. 1986), *aff'd sub nom. McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

In *Richland Shoe*, the Supreme Court agreed with the Third

---

[3]Witherspoon and Sanders were employed for less than two years, making the characterization of the violation irrelevant for them. Only Desmond's calculation would change.

Circuit. 486 U.S. at 131. In doing so, the Court noted that the FLSA was originally enacted in 1938 without a statute of limitations, but was amended in 1947 to add a two-year period. *Id.* at 131–33. In 1966, Congress distinguished between ordinary and willful violations of the FLSA and extended the statute of limitations to three years for willful violations. *Id.* Because the *Jiffy June* standard functionally obliterated the distinction between willful and non-willful violations, the Court concluded that Congress did not intend such an expansive definition of willful. *Id.* Moreover, in determining what willful meant, the Court incorporated the standard of willfulness that it articulated in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–28 (1985) (analyzing willfulness under 29 U.S.C. § 626(b) of the ADEA). Thus, only those employers who "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]" have willfully violated the statute. *Richland Shoe*, 486 U.S. at 133. Negligent conduct is insufficient to show willfulness. *Id.* at 135. Furthermore, the employee bears the burden of proof when alleging a violation is willful. *See id.*

Following *Richland Shoe*, we have examined the issue of willfulness under the FLSA in two published decisions. In *Lyle v. Food Lion, Inc.*, we upheld the district court's determination that Food Lion's violation of the FLSA was willful. 954 F.2d 984, 987–88 (4th Cir. 1992). Lyle and his co-plaintiff Tew were both hourly employees in a Food Lion store. Both alleged they worked uncompensated overtime hours with the knowledge of Food Lion officials, who had given them their own keys to the store to facilitate such work. *Id.* at 986–87. Food Lion officials insisted they had no such knowledge, and such overtime work would have been impossible to perform without their knowledge. *Id.* at 987. Following a bench trial, the district court noted the issue required the court to assess witness credibility. *Id.* Finding the employees more credible, the district judge found in their favor. *Id.* After noting the highly deferential standard applicable to a judge's credibility determination, we upheld the decision. *Id.*

In *Martin v. Deiriggi*, we again upheld a determination of willfulness. 985 F.2d 129, 136 (4th Cir. 1992). The district court conducted a bench trial, and rested its finding of willfulness in part on witness credibility. *Id.* Moreover, the district court also considered the employer's payroll procedures, and evidence indicating the employer had destroyed and withheld payroll records from DOL investigators. *Id.* As in *Food Lion*, we upheld the finding of willfulness.

Here, the district court awarded summary judgment to the former employees on the willfulness issue. *Desmond*, 661 F. Supp. 2d at 586. Our review of this issue is de novo and the former employee (as the parties seeking summary judgment) must demonstrate an absence of a genuine issue of material fact on the willfulness issue.

In support, the former employees argue that Charles Town Gaming willfully ignored their own official job descriptions, which described the positions as non-exempt beginning in 1999. *See* J.A. 55–56. The district court relied on this evidence in granting summary judgment to the former employees. *See Desmond*, 661 F. Supp. 2d at 586.

In opposition to this conclusion and in support of its argument that there is a genuine issue of material fact concerning willfulness, Charles Town Gaming cites the district court's first summary judgment order. *See* J.A. 55–56. In that order, the district court observed that Charles Town Gaming personnel testified that the FLSA designation on the job descriptions was created by a computer program, the designation was a typographical error, and the error was then mistakenly carried forward to the job description in later revisions. J.A. 55–56. Charles Town Gaming also contends that its erroneous exemption classification of the former employees as subject to the administrative exemption was not reckless, in that the district court initially upheld the classification in this case, and required a published Fourth Circuit opinion to clarify that the positions were not exempt. Charles Town Gaming also

cites the November 20, 2007 affidavit of Karen Raffo, which provides further evidence regarding a change in wage calculation from a per diem to a salary basis. *See* Aff. Karen Raffo, Nov. 20, 2007. Charles Town Gaming submitted this affidavit in support of its first motion for summary judgment. *See* J.A. 29. Finally, Charles Town Gaming cites Margaret Patterson's deposition testimony, J.A. 113–42, and contends that the cumulative force of the foregoing evidence creates a genuine issue of material fact on the willfulness issue.

When the evidence is viewed in the light most favorable to Charles Town Gaming, a genuine issue of material fact exists as to willfulness. *See*, *e.g.*, *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163–64 (4th Cir. 1992). Accordingly, we vacate the judgment and remand the case to the district court for a trial on the issue of willfulness.

## III.

The district court properly applied *Overnight Motor* in computing unpaid overtime compensation under 29 U.S.C. § 216(b). However, the district court erred in entering summary judgment on the issue of willfulness. Thus, the district court's judgment is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*