Richard Mark Gergel, United States District Court Judge
Before the Court is Plaintiffs' motion for summary judgment. (Dkt. No. 41.) For the reasons set forth below, Plaintiffs' motion is granted.
I. Background
Defendant Mark Keller is the sole member of Defendant Keller Unlimited, LLC, *649 which owns and operates two restaurant-sports bars-Two Keys Public House in Summerville, South Carolina and Two Keys Tavern in Ladson, South Carolina-at which Plaintiffs were employed as bartenders. (Dkt. No. 23-1 at 1.) Plaintiffs allege that Defendants violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. (Dkt. No. 1 ¶¶ 1-2.) The Court granted Plaintiffs' motion for conditional class certification (Dkt. No. 27) and denied Defendant's motion to decertify the conductional class (Dkt. No. 49), and Plaintiffs now move for summary judgment on the issue of Defendants' liability for FLSA violations by deducting a portion of Plaintiffs' hourly wages for bar shortages while claiming a tip credit under the statute.
II. Legal Standard
Summary judgment is appropriate and the movant is entitled to judgment as a matter of law upon a "show[ing] that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. Id. Therefore, the court should grant summary judgment "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Props. , 810 F.2d 1282, 1286 (4th Cir. 1987).
The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross , 101 F.3d 1005, 1008 (4th Cir. 1996). The responding party must then demonstrate that specific, material facts exist and give rise to a genuine issue. Id. at 324, 106 S.Ct. 2548. For this showing, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' " in support of the responding party's case. Thompson v. Potomac Elec. Power Co. , 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc. , 190 F.3d 285, 287 (4th Cir. 1999) ).
III. Discussion
The FLSA requires employers to pay employees a statutory minimum hourly wage. 29 U.S.C. § 206(a). Under limited circumstances, the employer may pay a "tipped employee" an hourly wage that is less than the minimum wage. A "tipped employee" is one who is engaged in an occupation in which she customarily and regularly receives more than $30.00 per month in tips. 29 U.S.C. § 203(f). The employer may pay a tipped employee an hourly wage of no less than $2.13 if the amount of the tips that the employee actually receives, when added to the hourly wage that the employer pays, is at least equal to the minimum wage in effect under § 206(a). 29 U.S.C. § 203(m). This practice is known as the employer taking a "tip credit." An employer is prohibited from taking a tip credit "with respect to any tipped employee unless such employee has been informed by the employer of the [tip credit] provisions" of § 203(m). Id. Moreover, the employer may not take a tip credit "with respect to any tipped employee unless ... all tips received by such employee have been retained by the employee," except in cases in which tips are *650 pooled "among employees who customarily and regularly receive tips." Id.[1]
A. Defendants Violated the FLSA.
The statutory minimum wage is $7.25 per hour and it is undisputed that Defendants paid Plaintiffs between $4.13 and $4.75 per hour. (Dkt. No. 41-2 at 4; No. 45-1 ¶ 2.) It is also undisputed that Defendants deducted an amount equivalent to lost revenue caused by bar shortages, as audited and reportedly weekly to Defendants by Bevinco, from Plaintiffs' hourly wages paychecks. (Dkt. No. 41-2 at 5, No. 45 at 7, No. 45-1 at 9.) Mr. Keller was aware of this practice and described it as to "make the bar staff pay the loss" (Dkt. No. 41-3 at 3) and a "policy" of "[w]hatever the shortage that Bevinco calculated, then that was divided by the working bartenders" (Dkt. No. 41-1 at 21); a policy in which he "charged them for my loss of revenue from inventory loss" (Dkt. No. 41-1 at 22). Defendants further imposed the policy as a required term of employment[2] at Two Keys Tavern. (Dkt. No. 41-5 at 2.) Similar employment agreements for shortage deductions while claiming a tip credit have been found in violation of the FLSA. See, e.g. , Mayhue's Super Liquor Stores, Inc. v. Hodgson , 464 F.2d 1196, 1199 (5th Cir. 1972).
In response, Defendants contend that Plaintiffs under-report their gross income to the Internal Revenue Service and, therefore, that it is impossible for the Court to accurately calculate whether the beverage shortage deduction actually lowered Plaintiffs' total earnings to below the statutory minimum wage. (Dkt. No. 45 at 8.) This argument is inapposite to the undisputed fact that Defendants claimed a tip credit and then deducted bar shortages from their bartenders' paychecks for hourly wages. See, e.g. , Dorsey v. TGT Consulting, LLC , 888 F. Supp. 2d 670, n. 7 (D. Md. 2012) ("Businesses are disqualified from taking a tip credit where they deduct[ ] losses due to cash register shortages and unpaid taps from employees' paychecks or nightly tips.") (internal quotation marks omitted); Bernal v. Vankar Enterprises, Inc. , 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) ("Additionally and alternatively, summary judgment on the issue is appropriate because the unrebutted evidence establishes that Defendants deducted losses due to cash register shortages and unpaid tabs from Plaintiffs' paycheck[s]."). Defendants were therefore not entitled to take tip credits, and summary judgment that Defendants failed to pay Plaintiffs the minimum wage as required by the FLSA is granted.
B. Mr. Keller is Individually Liable for Defendants' FLSA Violation.
Plaintiffs seek summary judgment that Mr. Keller is individually liable for FLSA violations. The FLSA defines "employer"
*651 to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To identify the employer for these purposes, the district court may consider the "economic reality" of an individual's status in the workplace, as indicated by his job description, financial interest in the enterprise, and extent of control over the employment relationship. Gionfriddo v. Jason Zink, LLC , 769 F. Supp. 2d 880, 890 (D. Md. 2011) (citing Schultz v. Capital Intern. Sec., Inc. , 466 F.3d 298, 304 (4th Cir. 2006).
The record is replete with undisputed facts from which a reasonable factfinder would conclude Mr. Keller controls his businesses to the extent that he is individually liable for the bar shortage deduction practice in violation of the FLSA tip credit provision. Mr. Keller is the sole member of the LLC that owns and operates the two restaurants. (Dkt. No. 41-1 at 15.) He established the restaurants under an LLC that he and his prior partner incorporated without assistance from counsel (id. at 12) and Mr. Keller personally applied for and procured the restaurants' liquor licenses (id. at 13). Once the restaurants were ready to open, Mr. Keller hired general managers to oversee operations, such as hiring bartending staff, and he himself did not "work [there] on a day-to-day basis." (Id. at 34.) But Mr. Keller maintained constant oversight and decision-making authority over ongoing operations by, for instance, reviewing the weekly Bevinco audit reports (id. at 33) and communicating with the managers about operations several times per week, including through weekly in-person meetings at the restaurants that could last a few hours each (Dkt. No. 41-2 at 3). The type and frequency of this involvement is sufficient to find that Mr. Keller's status in this workplace is one of economic and operational control so as to hold him individually liable for Defendants' FLSA violation. Summary judgment on this issue is granted for Plaintiffs.
C. Defendants Willfully Violated the FLSA.
Plaintiffs next seek summary judgment that Defendants willfully violated the FLSA. Plaintiffs must show that Defendants "either knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by" the FLSA. Desmond v. PNGI Charles Town Gaming, L.L.C. , 630 F.3d 351, 358 (4th Cir. 2011) (quoting McLaughlin v. Richland Shoe Co. , 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) ). "Negligent conduct is insufficient to show willfulness," Desmond , 630 F.3d at 358, nor is an employer's violation of the FLSA willful where it is the result of a "completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects," McLaughlin , 486 U.S. at 135, 108 S.Ct. 1677. In short, a violation is not willful where "an employer acts unreasonably, but not recklessly, in determining its legal obligation." Id. at 135, 108 S.Ct. 1677 n.13.
Here, Mr. Keller did not consult with a lawyer on labor law compliance (Dkt. No. 41-2 at 12, 17, 27); did not consult with a lawyer on his practice of bar shortage deductions (id. at 22); did not himself research labor laws (id. at 15); and did not take any steps to verify that the payroll company was ensuring employees were properly paid (id. at 18). Each of these choices in a vacuum may not individually rise above the level of merely negligent conduct. See, e.g. Prusin v. Canton's Pearls, LLC , No. JKB-16-00605, 2017 WL 4347867, at *3 (D. Md. Sept. 29, 2017) (reliance on third-party payroll processor to advise of noncompliance with labor laws *652 may be negligent, but not itself sufficient evidence of willful conduct). But taken in their totality, these decisions illuminate a pattern of conduct in reckless disregard for the legal constraints that the law imposes on an employer who avails himself of the tip credit provision. Indeed, this conduct is ongoing: after having been put on notice of the applicable law by Plaintiffs' complaint, Mr. Keller nonetheless continues to deduct bar shortages from paychecks and to implement the Terms of Employment at both restaurants. (Dkt. No. 41-1 at 32, 35). See Williams v. Md. Office Relocators , 485 F. Supp. 2d 616, 621 (D. Md. 2007) (noting that a finding of willfulness requires "evidence that the defendant had previously been investigated for FLSA violations" and was therefore on notice of the law). Plaintiffs' motion for summary judgment that Defendants' conduct was willful is granted.
D. Plaintiffs Are Entitled to An Award of Liquidated Damages.
The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The district court may, in its discretion, decline to award liquidated damages where "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. This test imposes an "objective prong"-the employer bears the " 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " Burnley v. Short , 730 F.2d 136, 140 (4th Cir. 1984) (quoting Wright v. Carrigg , 275 F.2d 448, 449 (4th Cir. 1960).
Defendants failed to meet that burden here. Defendants offer no proof that the tip credit provision violation was in good faith and reasonable, and instead summarily "deny that this is a case meriting liquidated damages." (Dkt. No. 45 at 18.) To the contrary, the record demonstrates that Mr. Keller made "no effort to look into the law or seek legal advice until he was faced with a lawsuit," which the Court of Appeals for the Fourth Circuit has held merits an award of liquidated damages. McFeeley v. Jackson St. Entm't, LLC , 825 F.3d 235, 245 (4th Cir. 2016) (affirming district court's award of liquidated damages on tip credit violation). Plaintiff's motion for summary judgment for liquidated damages is granted.
IV. Conclusion
For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 41) is GRANTED.
AND IT IS SO ORDERED.

In the context of the employer deducting from the employee's pay for shortage costs, as the U.S. Department of Labor communicated, "When an employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions for walkouts, cash register shortages, breakage, cost of uniforms, etc., because any such deduction would reduce the tipped employee's wage below the minimum wage." (Dkt. No. 45-3 at 3.)

"Terms of Employment: Two Keys Tavern employs an outside firm (Bevinco) that audits bar sales and provides a report with discrepancies/shortages on a weekly basis. These discrepancies are due to not ringing up drinks or over pouring during shifts, resulting in a loss of revenue. If if the result of this report shows a loss in revenue, the amount of the loss to Two Keys Tavern is split between the working bartenders and deducted from wages weekly." (Emphasis in original.)