**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1634**

_____

HOUSTON CASUALTY COMPANY,

Plaintiff – Appellee,

v.

TRIDENT CONSTRUCTION SERVICES, LLC,

Defendant – Appellant.

_____

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Richard Mark Gergel, District Judge.  (2:22-cv-02037-RMG)

_____

Argued:  May 9, 2025                                      Decided:  July 7, 2025

_____

Before DIAZ, Chief Judge, and KING, Circuit Judge, and Thomas E. JOHNSTON, United States District Judge for the Southern District of West Virginia, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

**ARGUED:**  Jaan Gunnar Rannik, EPTING & RANNIK, LLC, Charleston, South Carolina, for Appellant.  Kevin Haas, CLYDE & CO US LLP, Morristown, New Jersey, for Appellee. **ON BRIEF:**  Janice Holmes, Washington, D.C., Alfred C. Warrington, CLYDE & CO US LLP, Miami, Florida, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this declaratory judgment action, Trident Construction Services, LLC ("Trident") appeals the district court's Order and Opinion of June 10, 2024, granting Houston Casualty Company's ("HCC") motion for summary judgment and denying Trident's motion for partial summary judgment. *See Houston Cas. Co. v. Trident Constr. Servs., LLC*, No. 2:22-cv-02037, 2024 WL 2942822 (D.S.C. June 10, 2024) (the "Opinion"). As explained herein, we affirm the Opinion's ruling that the costs of repairing defective construction, economic losses, and so-called "get-to" or "tear-out" costs are not covered under the commercial general liability policy (the "Policy") issued by HCC. On the other hand, we are satisfied that the court erred in failing to assess and resolve whether other costs incurred by Trident — such as those associated with resultant property damage — may be covered and are compensable under the Policy. Therefore, the district court incorrectly found that Trident's breach of contract and bad faith claims are moot. As explained herein, we affirm in part, vacate in part, and remand.

I.

A.

Trident was the general contractor for the construction of an upscale condominium complex in downtown Charleston, South Carolina — called The Gadsden — that was completed in 2018. The construction work was not performed by Trident but was instead carried out by several subcontractors. After completion of the construction work, three separate weather events caused flooding in four condominium units, necessitating

2

remediation of water damage and defective stucco that had allowed water intrusion. Trident identified the source of the water infiltration and, through its subcontractors, completed the necessary repairs — incurring costs totaling approximately $613,000.[1]

Trident is an "insured" covered under the Policy as part of an Owner-Controlled Insurance Program — also referred to as a "wrap" or "wrap-up" commercial general liability policy — issued by HCC to Gadsden Development Company I, LLC.  The Policy provides that HCC "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  *See* J.A. 697.[2]  As the Policy provides, "[t]his insurance applies to . . . 'property damage' only if . . . 'property damage' is caused by an 'occurrence[.]'" *Id.*  Put differently, HCC reserves the right to disclaim coverage for any amounts that do not constitute damages because of "property damage," or for any damage that was not caused by an "occurrence."  The Policy defines "property damage" as either "[p]hysical injury to tangible property, including all resulting loss of use of that property," or as "[l]oss of use of tangible property that is not physically injured."  *Id.* at 711.  The Policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* at 710.

---

[1] The subcontractors responsible for installing the defective stucco were later paid a second time to perform the remediation work to correct the damage caused by their original work.

[2] Our citations herein to "J.A. ___" refer to the Joint Appendix filed herein by the parties.

B.

On September 15, 2020, Trident submitted a claim to HCC for damages in the sum of $475,615.09, seeking reimbursement under the Policy for subcontractor repair costs related to both interior water damage and correction of defective construction. HCC conducted an independent investigation of the Trident claim and determined that a significant portion of the expenses being claimed were not covered under the Policy, as they pertained to the repair and replacement of defective stucco and its components.[3]

On June 8, 2021, HCC sent Trident its coverage position letter explaining that the Policy covers only "property damage" caused by an "occurrence," as defined therein. HCC's letter identified the parts of Trident's claim it considered to be covered, those parts not covered, and those "[p]otentially covered in part," emphasizing that the Policy excludes coverage for costs incurred to correct Trident's or its subcontractors' defective workmanship. *See* J.A. 556–59. HCC agreed to pay for what it deemed the covered portion of the claim, which related to interior water damage, in the sum of $91,658.69, and HCC stated that it remained "willing to consider any additional information that [Trident had] in support of the costs identified as potentially covered under the Policy." *Id.* at 559. HCC denied any reimbursement for all remaining expenses being claimed, i.e., those it deemed "not covered," that were associated with repairing defective construction.

---

[3] To assist in its evaluation of Trident's claim, HCC retained B2R Consulting Group ("B2R"), a group of construction experts, to distinguish between costs associated with resultant water damage — which may be covered by the Policy — and those incurred to correct faulty workmanship — which are not covered. B2R prepared a report for HCC, dated June 1, 2021, summarizing the relevant repair and remediation costs.

4

On October 11, 2021, in response to HCC's coverage letter, Trident's Senior Project Manager emailed HCC a breakdown of the unreimbursed costs and made a counterproposal. That email identified $295,803 in expenses Trident incurred that it viewed as relating to interior water damage repairs, including a proportional allocation of certain costs such as building envelope consultants, rental equipment, temporary toilets, demolition, clean-up, dumpsters, city permits, and overhead and profit. Subsequent emails and phone communications followed, but the parties were unable to reach an agreement. In these discussions, Trident ultimately asserted that it was entitled to recover not only the $295,803 identified in the October 11 email, but the full balance of its $475,615.09 claim.

C.

On June 28, 2022, HCC filed this lawsuit against Trident in the District of South Carolina seeking a declaratory judgment that the outstanding amounts sought by Trident were not covered by the Policy. On January 6, 2023, Trident filed its Answer and Counterclaims, alleging breach of contract and bad faith, and also seeking a declaratory judgment.

On April 22, 2024, Trident filed its motion for partial summary judgment and HCC also filed its own motion for summary judgment. On June 10, 2024, the district court filed its Opinion, granting HCC's summary judgment motion and denying Trident's cross-motion. Final judgment was entered the following day. Trident filed a timely notice of appeal, and we possess final order jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review a district court's ruling on cross-motions for summary judgment de novo. *Sheet Metal Workers' Health & Welfare Fund of N.C. v. Stromberg Metal Workers, Inc.*, 118 F.4th 621, 631 (4th Cir. 2024). When evaluating cross-motions for summary judgment, "the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

On appeal, Trident contends that the district court erred in ruling that the Policy does not provide coverage for the costs of replacing defective construction, economic losses, or the so-called "get-to" or "tear-out" costs. Trident further contends that, accepting the court's interpretation of the Policy, it was error to deny its claim for $295,803 in damages that were unrelated to faulty workmanship, and therefore error to award summary judgment to HCC on Trident's breach of contract and bad faith claims.

A.

We agree with the Opinion's determination that the Policy does not provide coverage for the cost of repairing Trident's own defective construction. Under South Carolina law, defective workmanship — standing alone — does not constitute "property damage" caused by an "occurrence," as those terms are defined in a standard commercial

6

general liability policy. *See L–J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 36 (S.C. 2005) (ruling that commercial general liability policies do not cover claims based solely on faulty workmanship); *see also Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 544 (S.C. 2009); *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 593 (S.C. 2011). And South Carolina law is clear that, although damages to otherwise non-defective property resulting from faulty workmanship may be covered, the costs of removing and replacing the defective work itself are not. *See Crossmann*, 717 S.E.2d at 594 (clarifying that "negligent or defective construction resulting in damage to otherwise non-defective components may constitute 'property damage,' but the defective construction would not"). The Opinion correctly applied the distinction between covered resultant damage and non-covered defective construction, concluding that the alleged damages that arose from Trident's efforts to replace the faulty stucco and related materials were not within the coverage provided to Trident by the Policy.

We also agree with the Opinion's determination that the Policy's coverage should not be read to include Trident's consequential or economic damages. As the South Carolina courts have consistently held, a commercial general liability policy is intended to cover tort liability for physical injury to the property of others, but not contractual liability for the insured's own economic losses stemming from substandard performance. *See Bennett & Bennett Constr., Inc. v. Auto Owners Ins. Co.*, 747 S.E.2d 426, 430 (S.C. 2013); *see also Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 320 (S.C. Ct. App. 1994) ("A general liability policy is intended to provide coverage for tort liability for physical damage to the property of others; it is not intended to provide coverage for the

7

insured's contractual liability which causes economic losses."). For that same reason, the Opinion correctly rejected Trident's claim for the "get-to" or "tear-out" costs — that is, expenses incurred by Trident to remove non-defective building components to access water damaged areas.

B.

On the other hand, we part ways with the district court on a narrow but nevertheless material aspect of this appeal. The court dismissed Trident's breach of contract and bad faith claims as moot because "HCC's decision to deny coverage comported with the Policy's terms[.]" *See* Opinion at 13. But under the Policy as interpreted by the Opinion, Trident may be entitled to coverage under one of those claims for additional costs incurred to repair resultant property damage.

Trident submitted as part of its claim to HCC a detailed cost breakdown identifying $295,803 in damages that, according to Trident, were incurred solely to repair interior water damage caused by defective work. The amount of those damages was not disputed by HCC, and Trident submitted the cost breakdown in response to HCC's own invitation for further substantiation of that aspect of its claim. HCC acknowledged in its coverage letter that those costs were "potentially covered," but nevertheless declined or failed to further evaluate or reimburse those claims.[4]

---

[4] The sum of $295,803 demanded by Trident includes $91,658.69 in undisputed covered costs that HCC has acknowledged as related to the repair of interior water damage.

8

Under the Policy as interpreted by the Opinion, Trident may yet be entitled to coverage for those "potentially covered" amounts if they were incurred to repair resultant property damage, rather than to fix defective construction itself. But whether Trident can satisfy its burden of proof on those specific aspects of its claim, whether they fall within its coverage under the Policy, or whether they are subject to some Policy exclusion, are determinations that should be made by the district court in the first instance. *See Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) ("[W]e are a court of review, not of first view."). In these circumstances, and because some portions of the Trident claim may yet be covered by the Policy, the district court's entry of summary judgment on Trident's breach of contract and bad faith claims was premature.

## IV.

Pursuant to the foregoing, we affirm the declaratory judgment award to HCC in part, vacate the dismissal of Trident's breach of contract and bad faith claims, and remand those claims for such other and further proceedings as may be appropriate.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*