PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN DESMOND; DANA
WITHERSPOON; M. LARRY SANDERS,
   *Plaintiffs-Appellants,*

    v.

PNGI CHARLES TOWN GAMING,
L.L.C., d/b/a Charles Town Races
& Slots,

   *Defendant-Appellee.*

No. 08-1216

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
John Preston Bailey, Chief District Judge.
(3:06-cv-00128-JPB; 3:06-cv-00129-JPB;
3:06-cv-00135-JPB)

Argued: March 24, 2009

Decided: April 30, 2009

Before DUNCAN and AGEE, Circuit Judges,
and David A. FABER, Senior United States District Judge
for the Southern District of West Virginia, sitting by
designation.

Reversed and remanded by published opinion. Judge Agee
wrote the opinion, in which Judge Duncan and Senior Judge
Faber joined.

**COUNSEL**

**ARGUED:** Paul B. Weiss, MARTIN & SEIBERT, LC, Martinsburg, West Virginia, for Appellants. Brian Michael Peterson, BOWLES, RICE, MCDAVID, GRAFF & LOVE, PLLC, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Charles F. Printz, Jr., BOWLES, RICE, MCDAVID, GRAFF & LOVE, PLLC, Martinsburg, West Virginia, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

John Desmond, Dana Witherspoon, and M. Larry Sanders (collectively "the Former Employees") appeal from the award of summary judgment to their former employer, PNGI Charles Town Gaming, L.L.C., d/b/a Charles Town Races & Slots ("Charles Town Gaming"). The district court held the Former Employees were barred as a matter of law from recovering unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (2000), because they held administrative positions and were therefore exempt employees. For the reasons set forth below, we reverse the judgment of the district court.

I.

Charles Town Gaming operates a casino and live horse racing facility in Charles Town, West Virginia. The Former Employees worked for Charles Town Gaming in a non-supervisory position denominated as "Miscellaneous Racing Official," which we will refer to as "Racing Official." In the performance of their work duties, each of the Former Employees assisted in various tasks associated with Charles Town Gaming's staging of live horse races. In the morning and on non-race work days, Racing Officials assist with clerical

duties in the secretaries' office, including noting rider changes, putting together the next day's racing program, and completing racing entries for the following day. Racing Officials, including the Former Employees, rotated work in four roles: Placing Judge, Paddock Judge, Horse Identifier, and Clerk of Scales during horse races. A Placing Judge "observ[es] races from start to finish and determine[s] the final outcome using a viper computer system and photo finish systems . . . ."[1] J.A. 69, 149-50, 216; *see also* W. Va. Code R. § 178-1-13 (2009). The Paddock Judge

> observ[es] the horses in the paddock prior to the running of a race, [ ] ensure[s] the horses are wearing the proper equipment for racing [and that] a responsible trainer or groom is in the paddock to saddle the horse and prepare it for the race. The Paddock Judge is also involved in seeing that a published workout is in the program or announced if [it is] not available by press time.

J.A. 69, 150, 215; *see also* W. Va. Code R. § 178-1-14 (2009). The Horse Identifier is "responsible for foal papers, Coggins test results, and tattoos insuring the correct horse is running in any given race. The [Horse] Identifier goes to the paddock at race time and checks each horse's tattoo." J.A. 69, 152, 215; *see also* W. Va. Code R. § 178-1-20 (2009). The Clerk of Scales "works in the jockeys' room prior to and after each horse race and verifies each jockey's presence and licensure, [as well as the jockey's weight] before and after each race . . . ." J.A. 216, 150-52; *see also* W. Va. Code R. § 178-1-17 (2009).

In September 2006, Charles Town Gaming terminated the Former Employees' employment due to "[g]ross violation of

---

[1]Three Racing Officials served as Placing Judges at each race, as required by West Virginia racing law. *See* W. Va. Code R. § 178-1-9.1 (2009).

procedures" after they unanimously posted an incorrect order of finish for a horse race. J.A. 254-56. The Former Employees subsequently filed separate complaints in the District Court for the Northern District of West Virginia alleging they "routinely" worked in excess of forty hours per work-week, but were not paid for the overtime part of that work as required by the FLSA. The cases were consolidated and the parties filed cross motions for summary judgment.

The district court granted Charles Town Gaming's motion for summary judgment, holding the position of Racing Official met the requirements for an administrative exemption under the FLSA. *Desmond v. PNGI Charles Town Gaming, LLC*, No. 3:06-cv-00128-JPB, slip op. at 1-2 (N.D.W. Va. Jan. 14, 2008). The Court determined that the Racing Official's "primary duty" entailed non-clerical, non-manual work related to Charles Town Gaming's production of live horse races, *id.* at 9-11, and those duties were "directly related to the management or general business operations of" Charles Town Gaming. *Id.* at 11-13. In reaching this conclusion, the court relied on the fact that West Virginia law "require[s] and regulate[s]" the Racing Official's position, and therefore is "critical for [Charles Town Gaming] to be able to conduct its business, [as Charles Town Gaming] could not conduct its business legally without them." *Id.* at 11. In addition, it noted that Racing Officials "are involved in" work functions identified in 29 C.F.R. § 541.201(b) as related to the general business operations of an employer, including quality control, safety and health, public relations, and legal and regulatory compliance. *Id.* at 12. Lastly, the district court held that the Racing Officials exercised discretion and independent judgment in matters of consequence to Charles Town Gaming. Among the factors identified by the district court were a Racing Official's responsibility to correctly identify the order of finish after comparing and evaluating the merits of any challenges to the initial posting, the authority to commit Charles Town Gaming "in matters that have significant financial impact," and the duty to check and ensure compliance with

numerous regulations related to the jockeys and horses partic-ipating in the races. *Id.* at 14-16; *cf.* 29 C.F.R. § 541.202(b) (2009).

The Former Employees noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (2000).

## II.

We review an award of summary judgment de novo. *Hawk-spere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 232 (4th Cir. 2003). Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We construe the evi-dence in the light most favorable to the Former Employees, the parties opposing Charles Town Gaming's summary judg-ment motion, and draw all reasonable inferences in their favor. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc).

## III.

The FLSA requires that certain employees be paid at time and a half for work over forty hours a week. 29 U.S.C. § 207(a)(1) (2009). Among the employees exempt from this overtime pay requirement are persons "employed in a bona fide executive, administrative, or professional capacity" ("the administrative exemption"). § 213(a)(1) (2009). The Secretary of Labor has adopted regulations that set forth a three-part test[2] for determining whether an employee is subject to the admin-

---

[2]Effective August 23, 2004, the regulations were amended from a previ-ous long and short test for the exemption; the amended regulations are applicable to this case. The amendments were not designed to significantly change the criteria for the exemption. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 338 (4th Cir. 2008).

istrative exemption: (1) the employee must be compensated at a salary rate of not less than $455 per week; (2) the employee's primary duty must consist of "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's primary duty must "include[ ] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200 (2009).

Charles Town Gaming bore the burden of proving, by clear and convincing evidence, *see Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993), that the Former Employees' jobs fell within the administrative exemption.[3] *See Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190 (1966); *Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986). FLSA exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

On appeal, the Former Employees contend the district court erred in awarding summary judgment to Charles Town Gaming because the position of Racing Official does not satisfy the second and third parts of the regulatory test.[4] As to the

---

[3] Charles Town Gaming contends that the burden of proof should only be a preponderance of the evidence and cites case law from other jurisdictions, including the Court of Appeals for the Seventh Circuit, to support this assertion. *See Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 506-08 (7th Cir. 2007). In *Shockley v. City of Newport News*, this Court unequivocally held that the proper standard is clear and convincing evidence. 997 F.2d at 21 ("Employers must prove by clear and convincing evidence that an employee qualifies for exemption" under 29 U.S.C. § 213(a)(1)). A panel cannot overrule the decision of a prior panel, *The Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 n.2 (4th Cir. 2002), so we do not entertain the merits of Charles Town Gaming's argument regarding the proper burden of proof.

[4] The parties agree the Former Employees fit within the first part of the test based on a weekly salary exceeding $455.

second requirement, the Former Employees assert the district court erred in relying on the legal "significance or necessity of an employee's position" in determining whether the position is "directly related to the management or general business operations of the employer." Appellants' Br. 15. The Former Employees also contend the district court misapplied the provisions of 29 C.F.R. § 541.201(b) by "parsing [its] literal nuances" to a Racing Official's duties without considering "whether such an application is consistent with the original Congressional intent" of the administrative exemption. Appellants' Br. 16-17. Lastly, they assert the "production/staff" dichotomy analysis contained in 29 C.F.R. § 541.201(a) contradicts the district court's holding because Racing Officials "are entirely involved in staging [the] product [of live horse racing contests and] have nothing to do with the operation of the business itself . . . ."[5] Appellants' Br. 17-19.

We agree that the district court erred in holding the position of Racing Official satisfied the requirement that the Former Employees' primary duty was "directly related to [the] general business operations of the employer." In reaching its conclusion, the district court improperly relied on the "critical" role of the Racing Official in that Charles Town Gaming "could not conduct its business legally without them." *Desmond*, slip op. at 11. However, the indispensability of an employee's position within the business cannot be the *ratio decidendi* for determining whether the position is directly related to the employer's general business operations. As we stated in *Clark v. J.M. Benson Co.*:

[Appellee] presses the district court's conclusion that

---

[5]On appeal, the Former Employees do not contest the district court's conclusion that the "primary duty" of the Racing Officials consisted of the work they performed during the horse races as Placing Judge, Paddock Judge, Horse Identifier, or Clerk of Scales. Accordingly, our review is limited to whether those particular roles are directly related to Charles Town Gaming's general business operations.

[she] was an "indispensable" employee, and for this reason, that her primary duty was "directly related to management policies or general business operations." But while [Appellee] may have held an indispensable position because she represented the entire accounting department, this fact is insufficient to prove that her primary duty was administrative as a matter of law. Certainly secretaries and clerks, where a business employs only one, may be "indispensable." Yet the regulations generally exclude those "run-of-the-mine" jobs from administrative classification. The regulations emphasize the *nature* of the work, not its ultimate consequence. Thus, Clark's apparent indispensability does not obviate the need to prove independently that [her primary duty] is "directly related to management policies or general business operations."

789 F.2d at 287 (footnote omitted).

The same principle applies in the case at bar. That the position of Racing Official was "indispensable" because of state law, rather than business practice, does not alter the analysis. State or local law may also require a construction company to post a flagman around a highway work site in order to coordinate traffic, but no colorable argument can be made that the flagman's work is directly related to the construction company's general business operations. Looking to the "significance" or "indispensability" of a position within a company's business operations diverts attention from the requisite inquiry. Both the FLSA and its regulations make clear that an employee is exempt based on the *type* of work performed by that individual, not whether business practice or applicable law require a particular position to exist. Therefore, the district court erred in holding that the Former Employees' work was directly related to Charles Town Gaming's business operations because that work was necessary in order for the company to operate lawfully.

The applicable FLSA regulations provide further guidance in determining whether an employment position satisfies the administrative exemption requirement:

> The phrase "directly related to the management of general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> [Such work] includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. . . .

29 C.F.R. § 541.201(a)-(b).

We have previously analyzed whether a particular position was directly related to the general business operations of an employer. In *Shockley*, we held one employee's duties satisfied this requirement because she investigated complaints against other officers, analyzed the relevant facts, interpreted department policy, and recommended a course of action that was usually followed. 997 F.2d at 28. Because the employee "spent all her time accumulating and analyzing data and making recommendations that shaped the police department's policy with regard to internal discipline[, her work was] 'directly related to management policies.'" *Id.*

In *West v. Anne Arundel County*, 137 F.3d 752 (4th Cir. 1998), we held an EMS Training Lieutenant's position was

directly related to the operation of the EMS Division because the Lieutenant "develop[ed], coordinate[d], implement[ed,] and conduct[ed] EMS training programs[;] prepare[d] lesson plans and training aids[;] supervise[d] delivery of training and tests[;] and evaluate[d] new equipment." *Id.* at 764.

More recently, in *Darveau v. Detecon, Inc.*, we held that Darveau, an "inside salesman" for Detecon, met the criteria for the administrative exemption. 515 F.3d at 339. Darveau approached current and potential clients, discerned their needs, and relayed that information to Detecon's technical staff, who then created a tailored package of services that Darveau integrated into a formal proposal. *Id.* Darveau was a member of Detecon's "Executive Team" and "helped to shape Detecon's general business policies . . . by proposing revisions to Detecon's travel and expense policy [and] work[ing] closely . . . in hiring two additional directors of sales." *Id.* We concluded that Darveau's "significant role in conducting both specific sales and shaping Detecon's more general market strategy, as well as his participation in the company's overall management and hiring policy [was] wholly unlike the 'routine selling efforts focused simply on particular sales transactions'" of a non-exempt wholesale salesperson. *Id.*

In contrast to the duties of these exempt employees in *Shockeley*, *West*, and *Darveau*, the Former Employees' work was not directly related to the general business operations of Charles Town Gaming. During the horse races, Racing Officials fulfilled one of several roles, which required them to observe and examine the horses, the jockeys, the trainers or grooms, the relevant paperwork for the horses, the order of finish for the race, or the paperwork associated with any subsequent claims. Racing Officials have no supervisory responsibility and do not develop, review, evaluate, or recommend Charles Town Gaming's business policies or strategies with regard to the horse races. Simply put, the Former Employees' work did not entail the administration of – the "running or servicing of" – Charles Town Gaming's business of staging live

horse races. The Former Employees were not part of "the management" of Charles Town Gaming and did not run or service the "general business operations." While serving as a Placing Judge, Paddock Judge, or performing similar duties is important to the operation of the racing business of Charles Town Gaming, those positions are unrelated to management or the general business functions of the company.

Instead, a Racing Official's work consisted of tasks somewhat similar to those performed "on a manufacturing production line or selling a product in a retail or service establishment." *Cf.* 29 C.F.R. § 541.201(a). Although the administrative-production dichotomy is an imperfect analytical tool in a service-oriented employment context, it is still a useful construct. Other Circuit Courts of Appeal have adopted and modified its logic to less traditional "production" situations:

> [A]pplying the administrative-production dichotomy is not as simple as drawing the line between white-collar and blue-collar workers. On the contrary, non-manufacturing employees can be considered "production" employees in those instances where their job is to generate (i.e., "produce") the very product or service that the employer's business offers to the public. *See, e.g.*, *Reich v. New York*, 3 F.3d 581, 587-89 (2d Cir. 1993) (police investigators conduct or "produce" criminal investigations); *Dalheim v. KDFW-TV*, 928 F.2d 1220, 1230-31 (5th Cir. 1990) (television station's producers, directors, and assignment editors "produced" newscast, and were thus non-exempt).

*Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997).

As relevant here, Charles Town Gaming "produces" live horse races. The position of Racing Official consists of "the

day-to-day carrying out of [Charles Town Gaming's] affairs" to the public, a production-side role. *See Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990), *cited with approval in Shockley*, 997 F.2d at 29. Because a Racing Official's duties are not directly related to the general business operations of Charles Town Gaming, the position does not satisfy the requirements for the administrative exemption under the FLSA.[6]

Accordingly, the district court erred in awarding summary judgment to Charles Town Gaming.

## IV.

For the foregoing reasons, we reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

---

[6]In light of our disposition of this issue, and because the administrative exemption only applies if all three parts of the test are satisfied, we need not consider whether the district court also erred in holding that the position of Racing Official satisfied the requirement of exercising discretion and independent judgment.