Mark S. Davis, CHIEF UNITED STATES DISTRICT JUDGE
This matter is before the Court on a motion for summary judgment filed by defendant Serenity C & C, Inc. ("Defendant" or "Serenity"). ECF Nos. 14, 15. The parties have requested a ruling on the briefs. ECF No. 20. After examining the briefs and the record, the Court agrees that oral argument is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b) ; E.D. Va. Loc. R. 7 (J). For the reasons stated below, Defendant's motion is GRANTED.
I. FACTUAL AND PROCEDURAL BACKGROUND
Defendant is a corporation licensed in Virginia to provide support and training to their clients who are individuals with intellectual and developmental disabilities ("Clients"). Def.'s Br. 1, ECF No. 15; Hernandez Decl. ¶ 3, ECF No. 15-1. One of the services that Defendant provides for its Clients is the Sponsored Residential Program where the Clients live with family *549 sponsors ("Sponsors"), who have contracted with Defendant to provide appropriate food, lodging, sanitation, and a residential home environment for the Clients. Def.'s Br. 2; Hernandez Decl. ¶¶ 4, 6. The Sponsors agree to adhere to Defendant's guidelines and regulatory requirements and to complete the necessary training and certifications. Def.'s Br. 2; Hernandez Decl. ¶ 6. Defendant compensates the Sponsors based on the level of service they provide to the Clients. Def.'s Br. 2, Hernandez Decl. ¶ 6. While participating in the Sponsored Residential Programs, Clients receive services from other providers such as mental health professionals and counselors. Def.'s Br. 2; Hernandez Decl. ¶ 5.
In September of 2017, Defendant hired plaintiff Athena Brown ("Plaintiff") as a "Program Coordinator" whose job was to supervise the Clients and their Sponsors in the Sponsored Residential Program. Def.'s Br. 2; Hernandez Decl. ¶¶ 7-8. Specifically, the job description given to Plaintiff on the day she was hired provides that the primary duties of a Program Coordinator consist of the following:
1. Develop and ensure on-going implementation of Individual Support Plans, Behavioral and Therapeutic Treatment Plans. Ensure adherence to Licensure, Human Rights, and/or other State, Federal, or Local regulations.
2. Develop and coordinate meetings and training for staff, individuals and families regarding supports and services within the sponsored residential.
3. Provide 24-hour on call accessibility for staff related to issues of individual support plans or advanced behavioral issues.
4. Maintain current and accurate files on each person served.
5. Coordinate and conduct intakes.
6. Processing of all files/individual as well as provider.
7. Have contact with families, guardians, CSB', and social workers etc.
8. Coordinate and conduct monthly meetings and complete minutes.
9. Provide input and recommendations (verbal and/or written) regarding issues of admissions, transfers, and discharges
10. Review, receive and maintain the sponsor training folder
11. Collect and review monthly documentation from providers
12. Conduct monthly visits/inspections of sponsor residential homes.
13. Conduct Home studies.
14. Review support data and progress notes in order to modify/revise individual support plans, behavioral supports, treatment plans, etc. as needed.
15. Participate in sponsored residential. Conduct/report monthly on-site observations (e.g. Residential)
16. Maintains a valid Virginia driver's license insurable under Serenity C & C INC. auto insurance.
17. Follow all applicable policies and procedures of Serenity C & C Inc.
18. Perform other duties as assigned.
Def.'s Ex. 3, ECF No. 15-4; see Def.'s Br. 3; see also Hernandez Decl. ¶¶ 9-10. According to Plaintiff, Plaintiff's duties as a Program Coordinator included
supervis[ing] or ... oversee [ing] the sponsor providers and individuals with guidance from our supervisor, from the directors.... writing reports ... going to home visits, inspecting home visits, on-call situations or emergencies, holding annual meetings, meeting other entities, going to ... different job fairs, auditing books, ... trainings with individuals, sponsor providers[,] ... ensuring that the sponsor providers follow the guidelines under Serenity and licensure[,] ... filing papers and reports, *550 writing monthly documentation, [and] care coordination.
Brown Depo. 8, ECF No. 15-2. As a part of her job in carrying out these duties, Plaintiff supervised approximately 18-20 Clients and 15-20 Sponsors at a time and had the authority to remove Clients from their Sponsors' homes if the Sponsor was not fulfilling the criteria for the program. Def.'s Br. 5; Hernandez Decl. ¶ 10.
During her employment, Plaintiff was placed on probation for failure to perform her duties properly and on time. Def.'s Br. 5; Hernandez Decl. ¶ 11. As a result, Plaintiff received on-going performance counseling in which she was reminded of the duties she was expected to complete as stated in her job description. Def.'s Br. 5; Hernandez Decl. ¶ 11; Def.'s Ex. 16, 17, 18, ECF Nos. 15-6, 15-7, 15-8. In one of those written counseling documents, Plaintiff was reminded that " [i]t is imperative that all Program Coordinators be proactive and take[ ] initiative in accordance to [sic] the job description." Def.'s Ex. 18; Brown Depo. 87, ECF No. 15-2; Def.'s Br. 6. In response to the counseling, Plaintiff maintained that she was "fully competent and handling [her] caseloads as well as the responsibilities [as] a program coordinator with the company." Def.'s Ex. 18 at 5; Brown Depo. 88-89; Def.'s Br. 6. On August 3, 2018, Plaintiff took a leave of absence from work for medical reasons. Def.'s Br. 6; Hernandez Decl. ¶ 7. Plaintiff never returned to work for Defendant following her medical leave. Def.'s Br. 6; Hernandez Decl. ¶ 7.
Plaintiff filed a Complaint in this Court against Defendant on September 7, 2018, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime wages for the hours she worked when she was a Program Coordinator. Compl., ECF No. 1. Defendant answered the Complaint on October 9, 2018. Def.'s Ans., ECF No. 4. On May 28, 2019, Defendant filed the instant Motion for Summary Judgment, ECF No. 14, and an accompanying brief and evidence in support, ECF No. 15, asserting an affirmative defense that Plaintiff was not entitled to overtime because she was properly classified as "exempt" from overtime under what is known as the "administrative exemption." Defendant argues that there is no dispute of material fact relevant to the application of the exemption and that the undisputed facts prove, as a matter of law, that Plaintiff was exempt. Def.'s Br.6-7. On June 11, 2019, Plaintiff filed a memorandum in opposition to the motion for summary judgment arguing that Defendant has failed to meet is burden to prove that Plaintiff is exempt. Pl.'s Resp., ECF No. 18. Defendant replied on June 14, 2019. Def.'s Reply, ECF No. 19. Trial is scheduled to begin in this case on July 23, 2019. Having been fully briefed, this matter is now ripe for review.
II. STANDARD OF REVIEW
The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific *551 facts in the form of exhibits and sworn statements illustrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012) (citation omitted). "Because 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge,' " the Court must only evaluate the evidence to the extent necessary to determine whether there is " 'sufficient disagreement to require submission to a jury or whether [the evidence] is so one-sided that one party must prevail as a matter of law.' " McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Anderson, 477 U.S. at 255, 251-52, 106 S.Ct. 2505 ). In making such determination, "the district court must 'view the evidence in the light most favorable to the' nonmoving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting Tolan v. Cotton, 572 U.S. 650, 657, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) ).
III. DISCUSSION
A. Local Rule 56(B)
As a preliminary matter, the Court notes that Plaintiff has failed to comply with Local Civil Rule 56(B), which states that a brief in response to a motion for summary judgment "shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. R. 56(B). Plaintiff failed to specifically identify any material facts in dispute, and therefore, of course, failed to list any such facts in a separate section. This may be of no moment, as the remainder of Plaintiff's brief does not dispute the facts relied upon by Defendant and, in fact, relies upon such facts. Moreover, Plaintiff has failed to provide any additional evidence in support of her position. Accordingly, Plaintiff has not adequately disputed any of the facts stated by Defendant. Therefore, in accordance with Local Rule 56(B), "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. R. 56(B) ; accord Anglinmatumona v. Micron Corp., No. 1:11-cv-572, 2012 WL 1999489, at *4, 2012 U.S. Dist. LEXIS 77289, at *10-12 (E.D. Va. June 4, 2012).
That said, a non-movant's failure to comply with Local Rule 56 does not automatically result in a ruling in favor of the moving party. Even if a non-moving party fails to comply with Local Rule 56(B), the Court should still generally determine whether the moving party has met its burden on a motion for summary judgment, rather than deciding the motion on a technicality, see Hedrick v. Roberts, 183 F. Supp. 2d 814, 819 (E.D. Va. 2001) ; Williams v. Gradall Co., 990 F. Supp. 442, 444 (E.D. Va. 1998), particularly where the body of the non-moving party's brief suggests no disagreement with the undisputed facts listed by the moving party. Thus, for more minor violations of Local Rule 56(B), courts sometimes will refuse to "elevate form over substance" and, instead, will excuse the party's failure to comply with the rule. White v. Golden Corral of Hampton, LLC, No. 4:13cv27, 2014 WL 1050586, at *4, 2014 U.S. Dist. LEXIS 33795, at *10 (E.D. Va. Mar. 14, 2014) ; see *552 SwimWays Corp. v. Zuru, Inc., No. 2:13cv334, 2014 WL 3615981, at *9, 2014 U.S. Dist. LEXIS 98092, at *27-29 (E.D. Va. July 18, 2014).
Here, Plaintiff's error is not fatal to her case. The consequence of Plaintiff's failure to comply is provided by the Rule itself: The Court deems Defendant's statement of undisputed facts to be admitted by Plaintiff. See E.D. Va. Loc. R. 56(B). As a result, Defendant has met its burden to show that there is no dispute of material fact over the facts relevant to whether the administrative exemption applies. Nevertheless, Defendant must still meet its burden to show that the undisputed facts support a finding in its favor as a matter of law. Fed. R. Civ. P. 56(a) (stating that a court should grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). This is particularly true where, like here, the Defendant's motion is based on an affirmative defense, which the Defendant has the burden to prove. Accordingly, due to Plaintiff's failure to comply with Local Rule 56 and failure to dispute facts or provide evidence, the Court deems the facts identified by Defendant as undisputed and admitted by Plaintiff. As a result, the Court will move to the next step of the analysis and determine whether the undisputed facts support a judgment in favor of Defendant as a matter of law.
B. Administrative Exemption
Pursuant to the FLSA, "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). However, Congress has indicated that employees "employed in a bona fide executive, administrative, or professional capacity" are exempt from the overtime requirements of the FLSA. 29 U.S.C. § 213(a)(1). Congress created these exemptions to reflect the fact that employees in these exempt positions earned higher wages and "were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg 22,122, 22,124 (Apr. 23, 2004). "Additionally, 'the type of work they performed was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week,' thus 'precluding the potential job expansion intended' by the overtime premium." Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 121 n.6 (4th Cir. 2015) (quoting Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,124 ). In other words, because it would be more difficult to accomplish the goal of right sizing the workforce if "white collar" employees, whose workload and schedules are less predictable, were paid overtime than it would be if employees whose work is more standardized, like factory employees working on the production line, were paid overtime, Congress chose to exempt the "white collar" employees. See Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,122-22,124.
The issue here is whether Plaintiff qualifies as an exempt employee under the administrative exemption. According to Department of Labor ("DOL") regulations implemented pursuant to the authority granted by Congress, a bona fide administrative employee exempt from overtime requirements is one who is
(1) Compensated on a salary or fee basis at a rate of not less than $ 455 per *553 week (or $ 380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;[1]
(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.
29 C.F.R. § 541.200(a). Each requirement is discussed in detail in the subsections below.
"Application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). "Employers must prove by clear and convincing evidence that an employee qualifies for exemption." Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993). " 'The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question,' and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt." Moody v. Family Dollar Stores (In re Family Dollar FLSA Litig.), No. 3:08MD1932-GCM, 2014 WL 1384576, at *3, 2014 U.S. Dist. LEXIS 49961, at *17-18 (W.D.N.C. Apr. 8, 2014) (internal citations omitted) (quoting Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 450 (4th Cir. 2004) and citing Grace v. Family Dollar Stores, Inc., 637 F. 3d 508 (4th Cir. 2011) ; Darveau v. Detecon, Inc., 515 F.3d 334 (4th Cir. 2008) ; Jones v. Virginia Oil Co., Inc., 69 F. App'x 633 (4th Cir. 2003) ; Smith v. First Union National Bank, 202 F.3d 234 (4th Cir. 2000) ).
1. Salary
To prove that an employee qualifies for the administrative exemption, an employer must first show that the employee is compensated on a salary or fee basis at a rate of not less than $455 per week. 29 C.F.R. § 541.200(a)(1). Defendant has shown, and Plaintiff does not dispute, that Plaintiff is compensated on a salary basis at a rate of $33,000 per year. Def.'s Br. 3; Def.'s Ex. 2 at 1, ECF No. 15-3. This equals approximately $634 per week, which exceeds the minimum salary rate required for application of the exemption.
While Plaintiff has not disputed Defendant's assertion that she was paid on a salary basis, during its independent review of the evidence presented, the Court noted, in a portion of Plaintiff's deposition *554 submitted by Defendant, that Plaintiff stated she was paid on an hourly basis. Brown Depo. 2. If her statement that she was paid on an hourly basis were true, then the exemption would not apply. That said, Plaintiff does not reference this statement in her briefing, nor does she even attempt to dispute Defendant's assertion that she was paid on a salary basis. Additionally, Defendant provided further evidence, Plaintiff's offer letter, which states she would be paid on a salary basis. Def.'s Ex. 2 at 1. Thus, there is not " 'sufficient disagreement to require submission [of this issue] to a jury [and] ... [the evidence] is so one-sided that [Defendant] must prevail as a matter of law' " on this requirement. McAirlaids, Inc., 756 F.3d at 310 (quoting Anderson, 477 U.S. at 255, 251-52, 106 S.Ct. 2505 ).
Accordingly, the Court finds that the undisputed facts and the evidence in the record prove that the minimum salary requirement has been satisfied.
2. Management or General Business Operations
Next, the employer must prove the second requirement by showing that the employee's primary duty is to perform "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). This requirement comprises three separate elements: (1) primary duty, (2) office or non-manual work, and (3) directly related to the management or general business operations.
a. Primary Duty
First, "[t]he term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In deciding whether something is the employee's primary duty, the Court should look at "the character of the employee's job as a whole" and consider factors including, but not limited to
the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
Id.
Here, Plaintiff does not dispute that the primary duties identified by Defendant and listed in the position description, ECF No. 15-4, and her resume, ECF No. 15-2, are the "principal, main, major or most important" duties she performed as a Program Coordinator. 29 C.F.R. § 541.700(a). It is clear that the "character of her job as a whole," 29 C.F.R. § 541.700 (a), was "[t]o supervise or to oversee the sponsor providers and individuals," Brown Depo. 8. Accordingly, the undisputed facts show that the duties Defendant relies upon, in its effort to show that Plaintiff performs work that is exempt from overtime under the administrative exemption, were Plaintiff's primary duties.
b. Office or Non-manual Work
Second, Plaintiff's primary duty must be "office or non-manual work." 29 C.F.R. § 541.200(a)(2). There is no dispute that Plaintiff primarily works in an office and engaged in non-manual work. Although some of Plaintiff's duties involve occasional home visits, either as a part of her monthly inspections or for emergencies when she is on call, the majority of her primary duties occur in the office setting (e.g. preparing reports, developing treatment programs, coordinating meetings and trainings, maintaining files, processing files, and reviewing documents and data). See Def.'s Ex. 3; Brown Depo. 8-9. Moreover, Plaintiff's job description states *555 that "[t]he work is sedentary" and that the person in her position "typically works in an office or residential setting," which is different than the "manual" work contemplated by the regulations. Def.'s Ex. 3. Accordingly, the undisputed facts and evidence prove that Plaintiff's primary duties fall within the category of "office or non-manual work."
c. Directly Related to Management or General Business Operations
Third, Plaintiff disputes whether, as a matter of law, her work was "directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). The DOL has provided further clarification on what it means to be "directly related to the management or general business operations" in order to meet the administrative exemption:
(a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
(b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.
29 C.F.R. § 541.201 (emphasis added). The United States Court of Appeals for the Fourth Circuit has instructed that "the critical focus is whether an employee's duties involve the running of a business as opposed to the mere day-to-day carrying out of the business's affairs." Calderon, 809 F.3d at 123 (internal citations and quotation marks omitted).
i. Administrative-Production Dichotomy
To analyze this requirement, the Court first considers where Plaintiff's duties fall within what is referred to as the "administrative-production dichotomy" by looking at whether Plaintiff's work is "production-type" work or work related to the administration or servicing of the business. See id. The contrast between administrative jobs that are exempt and "production" jobs that are not exempt originated in the factory setting where someone who works on the line producing a product is entitled to overtime, whereas the person who is in an office managing the operations of the factory is exempt from overtime.
*556 29 C.F.R. § 541.201(a). The dichotomy is more difficult to apply outside of the factory setting and in the service industry setting because "production" is not as easily defined in that context. See Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 694 (4th Cir. 2009) ("[T]he administrative-production dichotomy is an imperfect analytical tool in a service-oriented employment context."). Moreover, "while production type work is not administrative, not all non-production work is administrative." Calderon, 809 F.3d at 123. In response to comments pointing out the difficulty of applying the administrative-production dichotomy, the DOL has clarified that the dichotomy is not dispositive, but is intended as a relevant tool in the analysis. Defining and Delimiting the Exemptions, 69 Fed. Reg at 22,141.
Plaintiff argues that her duties should qualify as "production" because they were limited to "producing" the day-to-day business of Serenity, which she asserts is "the provision of case management coordination services to Defendant's developmentally disabled customers." Pl.'s Br. 5-6. On the other hand, Defendant argues that Plaintiff's primary duties are administrative duties because she was supervising the Sponsors who were actually producing the service of home care. Def.'s Reply 2.
Serenity is in the business of providing "support and training to individuals with intellectual disabilities" through placement in residential homes. Hernandez Decl. ¶ 3-4. The business is essentially a way to replace residential facilities that place individuals with disabilities in a more institutionalized setting, rather than a home setting. Significantly, Plaintiff is not a Sponsor providing the service of home care, rather, she is managing and supervising those Sponsors. Additionally, Plaintiff is coordinating with the Sponsors and with third party service providers to ensure the Clients are receiving all the services they need. Plaintiff's job is conceptually similar to that of someone who coordinates services in a residential facility, such as a group home or an assisted living community. Such a person would be considered administrative because they are not actually producing the services, such as medical care, therapy treatments, and food services, but, rather, are administering the business of residential care by managing the producers of that care. At least one other court has found that managers of an "adult family home" were exempt administrators because they were responsible for managing the operations of the facility, including supervising the employees, screening residents, paying bills, ordering supplies, and taking care of the residents' needs. Schryvers v. Coulee Cmty. Hosp., 138 Wash.App. 648, 158 P.3d 113, 118-19 (2007). Here, like the plaintiffs in charge of the adult family home in Schryvers, Plaintiff manages the Sponsors and helps them coordinate with other providers to ensure the Client is receiving all the services during the time that the Client lives with the Sponsor. The fact that the Clients are not all living in the same place does not change the nature of Plaintiff's job. In her own words, one of Plaintiff's primary duties, "care coordination," is "just coordinating with other people that actually take care of the individual." Brown Depo. 9. She is not actually the person taking care of the Defendant's Clients. Thus, as Plaintiff was not providing support and training to Defendant's Clients with intellectual disabilities, but was instead supervising and supporting the home-based Sponsors who were producing and directly overseeing the service of home care, Plaintiff was not involved in the production side of Serenity's business.
This is further evidenced by a comparison to cases in other jurisdictions that *557 have found employees with similar positions in home care companies to be exempt. For example, the United States District Court for the Eastern District of Pennsylvania found that a supervisor of the nurses at a company whose business was providing in-home nursing care to patients met the criteria for the administrative exemption. Goff v. Bayada Nurses, Inc., 424 F. Supp. 2d 816, 817, 823-24 (E.D. Pa. 2006). In finding that the plaintiff, Goff, satisfied the element of performing office or non-manual work directly related to the management or general business operations of the company, the court stated that
it is undisputed that Goff's work was office or nonmanual work. Bayada's business involved providing nurses for patients, and Goff matched nurses to patients, ensuring that company standards were met. As Goff stated in her resume on careerbuilder.com, as a staff supervisor at Bayada, she was involved in "casemanaging to ensure that the employee retains a positive relationship with the client and/or family while adhering to standards." (Goff Dep. at 30; Bayada Ex. 5). This direct role in managing and dealing with customers to ensure that standards were met fits within prong (2) of this exemption. Bayada has carried its burden of proving that no genuine dispute of material fact remains on the issue of whether Goff falls within the administrative exemption.
Id. at 824. In similar business models, other courts have found that the people providing the service of care or treatment were the "producers" whereas their managers were "administrative." See, e.g., Selfridge v. Jama, 172 F. Supp. 3d 397, 425 (D. Mass. 2016) (holding that a nurse whose primary duties at a company providing home health services were "meeting with doctors, doing payroll, keeping employment records, collaborating with vendors, inputting data, performing administrative tasks, and only occasionally seeing patients" fell within the administrative exemption because she was administrative while the home healthcare providers were producers); Hudkins v. Maxim Healthcare Servs., 39 F. Supp. 2d 1349, 1349-50 (M.D. Fla. 1998) (holding that, at a business that recruited nurses for its clients, "Plaintiff's primary duty as a recruiter was to promote, service, and administer the Defendant's general business operation of placement of nurses in such a manner so as to ensure that the nurses the Plaintiff placed with the Defendant's clients were capable of producing good nursing services").
Plaintiff's primary duties are strikingly similar to the duties of the plaintiffs in Goff, Hudkins, and Selfridge. Though she may not have the hiring power Goff had or the recruiting responsibilities of Hudkins, or the control over aspects of the business such as payroll like Selfridge, like the plaintiffs in all three cases, Plaintiff's primary duty was to manage other people who were actually producing the service of the business. Accordingly, Plaintiff's primary duties fall more on the administrative side rather than the production side of the business.
ii. Specific Duties
Next, because the dichotomy between production-type work and administration of the business is useful but not dispositive, the Court looks to whether Plaintiff's primary duties fall within the categories of work identified by the DOL as directly related to the management or general business operations rather than the day-to-day operations. As stated earlier, the regulations explain that
[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting;
*558 budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.
29 C.F.R. § 541.201 (emphasis added).
Many of Plaintiff's primary duties fall squarely within the list of examples provided in the regulation. Specifically, her primary duties involve auditing, quality control, personnel management, and legal and regulatory compliance. During her deposition, Plaintiff admitted that a part of her duty is auditing the books. Brown Depo. 8. Plaintiff also engages in quality control by monitoring the Sponsors and keeping records of the Clients and the Sponsors to ensure that the Client is receiving the quality of care that Defendant seeks to provide. See Hernandez Decl. ¶ 10 (explaining that Plaintiff's duties involved assuring that the program criteria are met); Def.'s Exhibit 3 (describing that Plaintiff has the authority to modify plans for the Clients as needed). Plaintiff also engages in personnel management in that she can essentially fire the Sponsors by removing the Clients from the home if the Sponsor is not complying with program criteria. See Hernandez Decl. ¶ 10. Additionally, as listed in both the job description (Defendant's Exhibit 3) and Plaintiff's resume (Defendant's Exhibit 4), one of Plaintiff's primary duties is to "ensure adherence to licensure requirements, human rights guidelines, and other governmental regulations." Def.'s Ex. 3; Def.'s Ex. 4. This falls within the category of work that is exempt because it is in the area of "legal and regulatory compliance." See 29 C.F.R § 541.201.
Additionally, Plaintiff develops and implements training for the Sponsors. Though training is not listed in the specific duties quoted above, the Fourth Circuit has recognized that an employee who spends more than 50% of their time developing training policies and training the other employees meets the requirements of the administrative exemption. West v. Anne Arundel Cty., 137 F.3d 752, 764 (4th Cir. 1998) (holding that Emergency Medical Technicians ("EMT") who were in charge of developing, coordinating, and implementing training programs for other EMTs were exempt under the administrative exemption because such activity was directly related to the management or general business operations of the Fire Department). Courts in other jurisdictions have also recognized that training other employees is an exempt duty. Vanstory-Frazier v. CHHS Hosp. Co., LLC, No. 08-3910, 2010 WL 22770, at *6-7, 2010 U.S. Dist. LEXIS 387, at *19-20 (E.D. Pa. Jan. 4, 2010) ; McKinney v. United Stor-All Ctrs. LLC, 656 F. Supp. 2d 114, 122-23 (D.D.C. 2009).
Plaintiff's supervisory duties are also generally considered exempt work. See Vanstory-Frazier, 2010 WL 22770, at *7, 2010 U.S. Dist. LEXIS 387, at *19-20 ; McKinney, 656 F. Supp. 2d at 122-23. The DOL regulations provide examples of supervisors who are normally considered exempt because their work is "directly and closely related to managerial" duties:
A supervisor who spot checks and examines the work of subordinates to determine whether they are performing their duties properly, and whether the product is satisfactory, is performing work which is directly and closely related to managerial and supervisory functions, so long as the checking is distinguishable from the work ordinarily performed by a nonexempt inspector.
*559 ....
A department manager in a retail or service establishment who walks about the sales floor observing the work of sales personnel under the employee's supervision to determine the effectiveness of their sales techniques, checks on the quality of customer service being given, or observes customer preferences is performing work which is directly and closely related to managerial and supervisory functions.
29 C.F.R. § 541.703(b)(3), (5). Like these examples, Plaintiff is supervising the work of the Sponsors by ensuring that they are adhering to company standards, licensure requirements, and regulations and by checking on the quality of services provided. Hernandez Decl. ¶ 10; Def.'s Ex. 3.
The Fourth Circuit has highlighted the importance of such supervisory responsibilities in determining whether an employee falls within the administrative exemption. See Desmond, 564 F.3d at 694. In Desmond, the plaintiffs were horse racing officials at a company whose business was to produce live horse races. Id. at 689-90, 694. The racing officials' jobs entailed assisting with clerical duties, noting jockey changes, compiling the program for each race, completing racing entries, determining the outcome of races, identifying horses and ensuring they met the requirements to race, and verifying the jockeys' presence and licensure at each race. Id. at 690. The Fourth Circuit found that, because these employees had "no supervisory responsibility and do not develop, review, evaluate, or recommend ... business policies or strategies," their job "consist[ed] of 'the day-to-day carrying out of' " their employer's business of producing horse races. Id. at 694 (citing Bratt v. County of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990) ). As a result, the Fourth Circuit held that the racing officials were not exempt. Unlike the racing officials, Plaintiff's primary duty is to supervise and manage the Sponsors in their provision of home-based services and to coordinate with the Sponsors and third-party providers to ensure Clients receive all the services to which they are entitled. She is not carrying out the day-to-day business of providing these services. If this were a group home or institutional setting, for example, it would be clear that the people providing the services (such as healthcare, food, and therapy) are involved in the day-to-day business of the residential facility, while the person coordinating these services and supervising the provision of such services is more involved in administering the business of the residential/institutional facility or group home.
Plaintiff's duties as a supervisor can also be distinguished from the duties of an employee described in guidance from the DOL. In a DOL opinion letter analyzing whether an employee met the administrative exemption criteria, the DOL guidance highlighted the fact that a non-exempt employee "does not supervise other employees." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Aug. 29, 2005). Unlike the employee described in that letter, who was an advocate for people with disabilities, Plaintiff supervises and manages people who care for individuals with disabilities.
iii. Conclusion About "Directly Related" Requirement
Plaintiff's primary duties, as explained above, are the kind encompassed by the administrative exemption because they are directly related to the management or general business operations of Defendant. Not only is she not engaged in "producing" the service Defendant provides, but many of her primary duties fall squarely within the specific categories of exempt work identified by the DOL. Because there is no *560 dispute of fact and Defendant has provided sufficient evidence to meet its burden, the Court finds that the "directly related" requirement is satisfied because Plaintiff's primary duties are directly related to the management or general business operations of her employer.
3. Exercise of Discretion and Independent Judgment
Finally, with regard to the third requirement, whether an employee's primary duty includes exercising "discretion and independent judgment" in "matters of significance," the DOL has explained that
(a) To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.
(b) The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.
(c) The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.
....
(d) An employer's volume of business may make it necessary to employ a number of employees to perform the same or similar work. The fact that many employees perform identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.
(e) The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. See also § 541.704 regarding use of manuals. The exercise of discretion *561 and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."
(f) An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.
29 C.F.R. § 541.202 (emphasis added). "Federal Courts generally find that employees who meet at least two or three of these facts are exercising discretion and independent judgment, although a case-by-case analysis is required." Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,143.
Plaintiff clearly exercises discretion and independent judgment on matters of significance. First, Plaintiff has the "authority to formulate, ... interpret, ... and implement ... operating policies," 29 C.F.R. § 541.202, through her duty of developing and implementing training, Def.'s Ex. 3 (noting that Plaintiff's duties are to "[d]evelop and coordinate meetings and training for staff, individuals and families regarding support and services within the sponsored residential" and to "[r]eview, receive and maintain the sponsor training folder"). Like the EMTs in charge of training in West, Plaintiff's primary duties of developing and coordinating training "necessitates the exercise of precisely such judgment and discretion" described in the regulations. West, 137 F.3d at 764. Second, Plaintiff has "the authority to remove an individual from a sponsor's home if the program criteria are not being satisfied." Hernandez Decl. ¶ 10. This authority is, essentially, authority to terminate contracts with the Sponsors by removing Clients from their homes. This is a matter of significance because maintaining these contracts and keeping Clients in Sponsors' homes is crucial to the operation of the business of providing home-based services through the Sponsors and third parties. Plaintiff has substantial authority to act on behalf of Defendant in this context. Third, Plaintiff's duties included giving input and advising her managers on significant matters such as admissions and discharges. Brown Decl. 15; Def.'s Ex. 3. Although Plaintiff may not have been the final decision maker, Brown Decl. 15, the regulations specifically provide that "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level," 29 C.F.R. § 541.202. Accordingly, because there is no dispute of material fact and the evidence put forth by Defendant is sufficient to satisfy its burden of proving that Plaintiff exercised discretion and independent judgment over matters of significance, this requirement has been met.
IV. CONCLUSION
Defendant has met its burden to prove that all requirements for application of the administrative exemption have been satisfied and, thus, Defendant is not subject to any liability for failure to pay Plaintiff for her overtime hours as Plaintiff was not *562 entitled to overtime pay. Because "there is no genuine dispute as to any material fact and [Defendant] is entitled to judgment as a matter of law," this Court will grant summary judgment in Defendant's favor. Fed. R. Civ. P. 56(a). Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.
The Clerk is REQUESTED to send a copy of this Opinion and Order to all counsel of record.
IT IS SO ORDERED

In 2016, the Department of Labor amended this regulation, changing the salary or fee rate to "a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region" pursuant to 29 C.F.R. § 541.600. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32,391, 32,549 (May 23, 2016). However, the United States District Court for the Eastern District of Texas issued a nationwide injunction of this Final Rule. Nevada v. United States DOL, 218 F. Supp. 3d 520, 533-34 (E.D. Tex. 2016). Such injunction is still in effect at this time, thus the salary rate of $455 per week still applies. Acosta v. Vera's White Sands Beach Club, LLC, Civil Action No. 8:16-CV-00782-PX, 2019 WL 1767147, at *6 n.6, 2019 U.S. Dist. LEXIS 67603, at *15 n.6 (D. Md. Apr. 22, 2019) (" 'Although the U.S. Department of Labor amended this regulation to increase the requisite salary level, the U.S. District Court for the Eastern District of Texas enjoined the amended regulation nationwide. Thus, $455 per week is the applicable salary test.' ") (quoting Lovo v. Am. Sugar Ref., Inc., No. RDB-17-418, 2018 WL 3956688, at *7, 2018 U.S. Dist. LEXIS 139543, at *18 n.7 (D. Md. Aug. 17, 2018) ).